THE CHATTAHOOCHEE BRICK COMPANY *v.* SULLIVAN.

1. The charge on the subject of damages, complained of in the 5th ground of the motion for a new trial, was correct, and in view of the evidence was sufficiently definite and comprehensive.

2. In stating to the jury what the parties respectively insist upon, the court is to be understood as referring to their contention at the time of the trial as parties, and not to their evidence as witnesses. What the court states on this subject in the charge will be taken as correct unless the contrary appears.

3. The testimony furnished *data* upon which the jury could estimate the amount of damages resulting from lost time, at least the minimum if not the maximum amount of such damages.

4. Instructions to the jury literally correct as to admissions made in a written agreement of the parties, will not needlessly be construed as ruling on admissions elsewhere made in the pleadings or the evidence.

5. Where it did not appear from the declaration that certain items to which the evidence refers were embraced in a much larger round sum admitted in the declaration, and where the court charged with reference to these items upon the evidence alone, making no reference to the declaration, the attention of the court should have been called by counsel to the admission therein of the larger sum, and a suggestion made that it covered the controverted items, if such was the fact.

6. It was at most a mere irregularity to allow the written charge of the court to go out with the jury; and this not being objected to at the time, it is no cause for a new trial. Whether it is not the better practice in some cases, if not in all, *quære?*

7. Where there is no evidence as to the character of witnesses, a charge to consider the character of each witness, is irrelevant;

but an irrelevant charge not calculated to be more hurtful to one party than the other, is generally no cause for a new trial. In this case there was no reference to the personal knowledge of the jurors. If there had been, whether previous decisions as to that question ought to be overruled, *quære ?*

8. The court erred in charging the jury to look to the reasonable cost of the work on four miles of the railway as a measure of deduction from the agreed price to be paid the plaintiff per mile, but as the error could not have occasioned any excess in the verdict beyond one hundred dollars, the case need not be tried over if the plaintiff will write off that sum from the verdict together with the interest recovered on that much of the principal.

9. The newly discovered evidence being cumulative, and due diligence as to some of it not having been exercised, it is no cause for a new trial.

October 17, 1890.

Damages. Charge of court. Evidence. Admissions. Practice. Witness. New trial. Before Judge VAN EPPS. City court of Atlanta. December term, 1889.

The petition of Sullivan alleged, in brief, that in 1888 he contracted with the Chattahoochee Brick Company for the laying of fifty-seven miles of railroad track and surfacing the road-bed of the railroad from Rome, Ga., to within ten miles of Chattanooga, Tenn., for $300 per mile, the brick company agreeing to furnish all material needed for the work and provide transportation for the same to the point of work, and that after March 1, 1888, the road-bed should be graded and all the trestles built ready to receive the track as fast as petitioner would need it for laying track from both ends of the fifty-seven miles; that he prepared to execute his part of the contract at the time agreed upon, but the brick company failed to have the road-bed ready for him until about April 10, 1888; that nevertheless he entered upon the discharge of his duties under the contract, and after much delay and hindrance caused by the failure of the company to carry out its obligations, he did, by June 25, 1888, complete the lay-

ing of the track he had agreed to do, for which he was entitled to receive of it $17,100; that he performed other work and services for it at its special instance and request, consisting in building and putting in at different points on the railroad ninety-five cattle-guards, amounting to $1,187.50, excavations for these guards of the value of $119.70, grading highway road-crossings, and grading and levelling road-beds in advance of track-laying, etc., $1,169.30, and furnishing boat-spikes, $32.80; that, in addition to this, the company failed to supply him with sufficient cross-ties to lay its track, and at its instance and request he laid rails upon thirty-one miles with fewer cross-ties than were required by the specifications, and afterwards, at its instance and request, put in other ties upon the thirty-one miles, at a cost to him of $1,634.25. He further alleged that he was damaged by delays in the work, caused by the failure of the company to have its road-bed ready, etc., at various times set out in his declaration from March 29, 1888, to June 21, 1888. So that the entire indebtedness of the company to him would amount to the sum of $24,051.89, except for certain credits to which it was entitled. These credits consisted of the following items: cash paid to it by him, $9,152.51; for services of locomotive engineers and fireman, $960.50; for amount paid J. Cavender for cattle-guards, $750.00; amount paid J. D. Stevens for hauling cross-ties, $132.70; for timber and framing thirteen cattle-guards, $95.25; for amount paid J. D. Beard on salary, $38.34; the whole of the credits amounting to $11,119.30.

The plea or pleas filed by the defendant do not appear in the record. During the progress of the trial, agreements were made between the parties, by which the matters in dispute were simplified and lessened. The following items claimed by plaintiff were admitted by defendant:

Track-laying on 52.6 miles from Rome and
    Decatur junction north, at $300 per mile $15,780 00
95 cattle-guards, $12.50 .................. 1,187 50
Grading highways, crossings, etc.......... 1,084 66
6 kegs spikes........ .................. 32 80
Retieing 31 miles....................... 1,550 00

    Total .......................... $19,634 96

The following items claimed by plaintiff were denied
by defendant:

For track-laying from Rome to junction, ad-
    mitted to be four miles, at $300........$1,200 00
Excavating for 95 cattle-guards............ 119 70
Watching gaps........... ....... ...... 169 30
All claims for delays set forth in declaration
    and amendments, amounting to........ 2,808 35

    Total ........................... $4,297 35

The following items claimed by defendant were ad-
mitted by plaintiff:

1888.

| | | | |
|---|---|---|---|
| April | 20.... ..........................$ | 150 | 00 |
| " | 27............................... | 650 | 00 |
| May | 4............................... | 700 | 00 |
| " | 12............................... | 1,000 | 00 |
| " | 21............................... | 1,500 | 00 |
| " | 26............................. | 700 | 00 |
| " | 31. Bates.................... | 20 | 00 |
| June | 9. Stephens .................... | 203 | 66 |
| " | 20. Hamilton.................... | 149 | 50 |
| July | 10. Foster...................... | 9 | 60 |
| " | 10. Worsham.................... | 23 | 10 |
| " | 16. Stephens.................... | 50 | 00 |
| " | 18..... ...................... | 1,035 | 00 |
| " | 18. Beard...................... | 34 | 84 |
| " | 24. Stephens.................... | 50 | 00 |
| " | 25. Cavendar................... | 750 | 00 |
| Aug. | 7............................... | 1,000 | 00 |
| " | 9. Stephens .................... | 499 | 00 |
| " | 9. 13 cattle-guards............. | 108 | 25 |
| " | 9. Alexander. ................ | 99 | 00 |
| " | 9. Engineer, etc................ | 1,047 | 25 |

    Total (as stated in record)......... $10,143 50

The following items claimed by defendant were denied by plaintiff.

1888.

| | | | |
|---|---|---:|---:|
| May 12. | Amt. paid Wingfield & Allen.....$ | 60 | 00 |
| June 7......... ... ,................... | | 1,200 | 00 |
| " 9. | J. A. Crayton.................... | 200 | 00 |
| " 20. | Baker.... ................... | 745 | 00 |
| July 10. | D. A. Crayton....... .......... | 103 | 45 |
| Aug. 9. | Alexander, $235.75 less $99 admitted...................... | 136 | 75 |
| | Labor of convicts............... | 7,176 | 33 |
| | Total .......................... $ | 9,621 | 53 |

The evidence introduced upon both sides was quite voluminous, entering much into matters of detail, so that it is possible to give only a brief statement of portions of it bearing upon the matters left in dispute. Upon the question as to how many miles the track of plaintiff covered, the testimony for plaintiff tended to show that it extended from a point twenty miles south of Chattanooga to Rome, a distance of fifty-seven miles, for which he was to be paid, under the contract, $300 per mile. In his testimony he stated that his average profit per mile was about $25. The four miles in dispute between the parties plaintiff did no actual work upon, but this work was done by certain convicts under direction of defendant, as will hereafter appear, but plaintiff claimed and his testimony tended to show that his contract covered the four miles, and that defendant was not released from its obligations to pay him, but was entitled to a credit for the convict labor. Upon this point the testimony for defendant tended to show that these four miles were not covered by plaintiff's contract, but the work upon them was done entirely by it and it was not indebted to him anything with regard to them.

Upon the subject as to when plaintiff should begin

work under the contract, and had the right to expect the road-bed to be in such condition as to enable him to proceed with his work uninterruptedly, there was direct conflict. The evidence for the plaintiff tended to show that this time was no later than on or about the 29th of March, 1888; while on the other hand, the testimony for the defendant tended to show that there was no specific time agreed upon.

Upon the subject of delays for which defendant was responsible, the testimony for the plaintiff tended to show that the delays were at such times and from such causes, substantially, as claimed in his declaration, except that it appeared that the delay at Tryon Factory was caused by a legal process, for which it did not appear that defendant was responsible. It further tended to show that some of the men in his employment received wages by the month, while others (the larger number of his employees) were day-laborers; that generally, during these delays, his whole force had to be kept together and paid in order to prevent his hands from scattering; and that for various reasons, such as the condition of the weather, lack of full tieing of the track, lack of work which could not be done profitably, and the fact that hands of plaintiff were kept waiting from day to day by promises made on behalf of defendant, but little could be done by the hands. The testimony for the defendant, on the other hand, tended to show that during these delays the day-laborers in plaintiff's employment were not paid by him; that they were not used in bringing up back work, such as surfacing the track and the like, at which they could have been profitably employed, and at which it was customary to employ a force during such delays, and that much of the delay and bad management of the work were caused by plaintiff being intoxicated, etc. Plaintiff admitted that he was intoxicated at times, but his testimony

tended to show that this did not occur at such times as to interfere with his management of the work. The testimony for defendant further tended to show that after plaintiff had completed laying the track, it was found that much of it was not laid according to the contract, so that a great deal of work in the way of surfacing, etc. had to be done upon it; and that up to the 9th of August or at any other time about that date, nothing was said by plaintiff to the representative of defendant about blame for delay or damages.

The testimony for plaintiff tended to show, that he was entitled to be paid for employing persons to watch cattle-gaps, while the testimony for the defendant tended to show that much if not all of this claim was unfounded. The testimony for plaintiff further tended to show that he was entitled to be paid for excavations made for cattle-guards, as claimed by him in the declaration; while on the other hand, the testimony for defendant tended to show the contrary.

As to the credits claimed by defendant and denied by plaintiff, the testimony for defendant tended to show that it was entitled to the amount paid Wingfield and Allen, because it was for framing cattle-guards which it paid for, and which were embraced in the ninety-five cattle-guards for which plaintiff claimed payment of it; it was entitled to the credit claimed for the amount paid D. A. Crayton on July 10th, for a similar reason, and to the credit claimed for the amount paid J. A. Crayton on June 9th, for a similar reason; and that it was entitled to a credit for the amount claimed to have been paid Alexander on August 9th, for a similar reason. As to these credits (except $99 in the Alexander transaction) the plaintiff testified that he knew nothing of them. His testimony tended to show that they were credits which should not be allowed against him.

Upon the subject of the labor of convicts, the evi-

dence for plaintiff tended to show that, without his knowledge, the defendant put convicts to do work which was covered by his original contract; that when he remonstrated on the subject, he was told that it was done because there was some trouble among the men in his employment, and it was thought by defendant he would not be able to get his work through in time; that he was told by persons authorized to represent defendant, that it could do the work cheaper than he could, and what profits there would be in it of course it would be willing to give to him; that it would put these men on and do the work and would not charge plaintiff anything but the cost of doing it, and he replied that if it would cost him nothing but the actual cost of the convicts on the work, he was satisfied to let them go ahead; that he never made an arrangement with defendant by which he was to pay it at the rate of $1.25 a day for these convicts; that the agreement was that defendant was to go ahead and do the work, and whatever it cost it would charge plaintiff; that there was never anything said to him about $1.25 per day until after the work was completed, when the defendant presented its claim to him, and he objected to it at the time. Upon the other hand, the testimony for defendant tended to show that its claim as to the amount due it for the convict labor was correct; that plaintiff was drunk and neglecting his work; that his hands had struck because they were not paid; that it was necessary for defendant to put a force to work in order that the work should be completed within the time by which plaintiff had agreed to finish it, or else defendant would have had a heavy forfeit to pay; that the situation was discussed with plaintiff, and it was agreed that the convicts should be put to work at $1.25 per day for the convicts and $2 per day for foremen, and plaintiff should be charged for the days they worked; that plaintiff consented to

this arrangement, appeared to be gratified at it, and defendant told him to go on just under the same terms, that it would charge him as above stated per day, and then credit him with $300 a mile just as he was getting credit on the other arrangement; that when the account was presented to him after the completion of the work, he did not object to it; and that the convicts cost about seventy cents each per day, guards were paid $1 per day, and foremen about $2 per day; and the number employed was stated.

Much of the testimony in the case was upon the subject of credits claimed by defendant for payments made to plaintiff, and principally upon the credits of June 7, $1,200, and June 20th, $745. Upon this subject the testimony for defendant was positive that it paid to plaintiff, through Bates, $950 of the amount for which it claimed credit under the date of June 7th, although it did not produce his receipt for this sum; and it was equally positive that it paid to plaintiff, through Bates, the $745 claimed as a credit under date of June 20th; and that $200 of the item of June 7th were paid at plaintiff's request to Stephens, this amount of $200 probably being covered by the amount claimed by it and admitted by plaintiff as the amount paid Stephens under date of June 9th. The testimony for plaintiff tended to show that of these two amounts, to wit, $1,200 and the $745, he may have received $740 or certainly no more than $840, he was uncertain which.

The jury found for the plaintiff $4,237.17 principal, with interest and costs. The defendant moved for a new trial upon the following grounds:

(1–3) Verdict contrary to law, evidence, etc.

(4) Error in charging: "The burden is on the plaintiff to satisfy your minds as to the number of miles of track-laying his contract embraced. He insists that it covered all the way from Rome to Redmond's section.

The defendant, on the contrary, insists that under the terms of the contract as finally understood and agreed between the parties, the plaintiff's part only extended from the Rome and Decatur junction to Redmond's section. This is a simple issue of fact to be decided by you in the light of the evidence, and of all the facts and circumstances of the case as disclosed. If you find this issue with the plaintiff, you will give him an additional credit of $1,200, of course subject to a counter-charge for the reasonable cost of the work. If you find it with the defendant, you need take no further notice of it, as it is covered under the agreement."

(5) Error in charging: "If you believe from the evidence that the defendant agreed with the plaintiff to furnish all the material, and to carry it to the point of work, and that on and after the first of March the road-bed should be graded, and trestles built ready to receive the track as fast as plaintiff would need the same for laying the track from both ends, and that plaintiff put himself into position to carry the work forward with a reasonable force of hands proportioned to the work to be done and the time it was to be done in, and that defendant broke its contract and did not have its road-bed graded and its trestles built as fast as plaintiff demanded the same for carrying out his own contract with them, and that thereby his force of hands were necessarily and unavoidably kept idle, and the plaintiff suffered damage from this cause, he would be entitled to recover therefor. It would be the duty of the plaintiff, if you find the contract as he insists it was, to so employ his hands as to diminish his damages as much as possible, and to avoid damage if he could by the exercise of reasonable diligence. If there was work on the other parts of the road within his contract which he could employ them on, he would be bound to do so; and if he suffered loss by his own negligence or inattention, he could not recover therefor."

(6) Error in charging: "The defendant insists that the contract was, that they would finish the work which Mr. Sullivan had to do, with convict labor, charging him for laborers $1.25 per day, and foremen or bosses $2 per day, and would allow him the difference between that and $300 a mile. Mr. Sullivan insists that the contract was, that he was to be charged only what the labor done by the convicts cost the defendant, and that they were to allow him the difference. Now if you be-. lieve from the evidence that the defendant was to pay the plaintiff the difference between the actual cost of the convict labor to them and $300 a mile, for the part of the road on which they entered with these convicts within Mr. Sullivan's contract, you would ascertain from the evidence what this cost was, and charge him with only the actual cost."

(7) The testimony did not show what part of the time, if any, during delays, was actually lost by the force.

(8) The court erred after having read his charge to the jury, in giving his charge, which was in writing, to the jury, who had it with them in their room during their consideration of the verdict, and until the verdict was rendered. (Note by the court: The charge necessarily covered many items and statements of amounts in figures, such as no mind could have carried in memory from hearing them once read. It was necessary for the jury, doing the work of an auditor as they were in this case, to have the charge in shape where they could get it in their deliberations upon each item as it arose.)

(9) Error in charging: "Mr. Sullivan insists that the contract was, that he was to be charged only what the labor done by the convicts cost the defendant, and that they were to allow him the difference."

(10) Because of newly discovered evidence.

(11) Because, when speaking of the agreement made

by the parties pending the trial, as to admitted and contested items, the court charged the jury as follows: "You should credit plaintiff with what is admitted in this agreement to be due him, and charge him with the amount admitted to have been received by him, that is, credit him with $19,634.96 and charge him with $10,143.50." Defendant insists that this amount limited the amount admitted by the plaintiff to the $10,143.50, and prevented the jury from considering all of the $9,142.51 cash admitted in the declaration, and by plaintiff's testimony.

(12) Because the court, when speaking of the credits for $950 and $745 claimed by defendant, erred in charging as follows: "If you are satisfied from the evidence that Mr. Sullivan got these sums or either of them, or any part thereof, you should charge him with the amount he actually received. If you are not so satisfied, you will disallow them." Testimony was offered by both parties as to these two items, and defendant insisted that they were embraced in the $9,142.50 admitted by plaintiff, and for that reason should be allowed. This charge confined the jury to the evidence and excluded consideration of the admission in the declaration, and it allowed the jury to find against plaintiff's admission, as a witness, that he got part of the $950.

(13) Because the court erred when, in speaking of the credibility of witnesses, he charged the jury to consider "the character of each witness and his opportunity to know the facts about which he testifies." There was no testimony as to the character of any witness.

In support of the ground as to newly discovered evidence, the defendant produced a receipt signed by plaintiff, and dated June 9, 1888, acknowledging the receipt from Bates, superintendent for defendant, of $950.

Also the affidavit of one Schafer, who during 1888 was employed as an engineer to lay track for Sullivan. This affidavit was to the effect that when the convicts were put on the work, Sullivan's men were on a strike and had been for a week, because they had not been paid; that it was rumored in the camps and on the works that Sullivan was in Chattanooga on a spree, and when he came upon the work he had the appearance of one who had been on a drunken spree; that affiant was present every time the hands were paid off on a portion of the work, covering several of plaintiff's claims for delays; and the day-laborers were never paid for lost time or for the time they were not at work; that during the delays at Cabin Creek and Summit Cut, there was plenty of surfacing, back-spiking and lining, etc. to do, and the force was kept employed at these; and that sometimes during delays, the weather would be bad so that the hands could not have worked if there had been no delay from other causes. Also the affidavit of the engineer who ran the construction-train for plaintiff when he was laying a portion of the track in question. This affidavit was to the effect that the construction-train brought material for track-laying faster than it was used, and no delay was caused for lack of material at any time while affiant was working for Sullivan; that Sullivan claimed he was short of hands, and affiant knew that material would so accumulate that a train going out on Friday would not go back with another load until the following Tuesday; that the day-laborers were not paid except for the actual time put in by them; and that there was no necessity for any hands to be idle, for there was plenty of work to do in putting in lacking ties, surfacing, etc. Also the affidavit of one of the jurors who tried the case, to the effect that his hearing was impaired; that he tried to hear what was said on this trial, but could not say whether he did

hear it all; and that he can read common, plain writing on familiar subjects, and examined the charge of the judge in this case, but some parts of it he could not read sufficiently to make sense of it. Also the affidavits of W. B. Lowe and J. W. English to the following effect: English is president of defendant, and Lowe one of its directors having charge of the work in question. Lowe had charge also of the preparation of this case, and prior to the trial searched for receipts given by plaintiff for money paid him. He searched in all the places where such papers were kept by the company and its officers and agents, and produced on the trial all such as he could find. He searched for the receipt for $950 given by Sullivan to Bates on June 9, 1888; and after diligent search in every place where it was likely to be or where he had any hope of finding it, he failed to find it. Since the trial, in looking over some old papers that had been considered of no value, and were not in the usual or proper place for valuable papers, he did find it. Neither he nor English knew, until after the trial, that the facts stated in the affidavits above mentioned could be proved by the affiants, and they believed each of the affiants to be reputable and worthy of credit. The attorneys for the defendant also made affidavit that they had no knowledge where the receipt of Sullivan for the $950 was, until after the trial, and that they did not know, until after the trial, that the facts stated in the affidavits above mentioned could be proved by the affiants.

The motion was overruled, and defendant excepted.

JOHN L. HOPKINS & SON and CANDLER, THOMSON & CANDLER, for plaintiff in error.

DEAN & SMITH and CALHOUN, KING & SPALDING, contra.

BLECKLEY, Chief Justice.

The facts appear in the official report.

1. There was no error in the charge of the court set out in the fifth ground of the motion for a new trial, which instructed the jury that if they found a certain state of facts by which the plaintiff suffered damage, he would be entitled to recover therefor. The point is made that the court gave the jury no rule for determining the kind of damage or for measuring the amount. Of course the charge is to be applied to the evidence, and that shows that the damage consisted of the plaintiff's expense incurred pending certain intervals of time during which the plaintiff could not proceed with the work by reason of the failure of the defendant to have ready for his use preliminary work which was essential. The evidence also furnished material from which the amount of the damage could be computed by the jury. It is said also that, if the delays occurred, it was the plaintiff's duty to keep his hands engaged on "back work," and that he was not bound to pay, and never did pay, his laborers when they were kept idle by delays; also that testimony was introduced on this question, and that the court withheld from the jury that part of the defence and the testimony relating to it. This criticism is met by the clause of the charge which made it a condition of recovery that the defendant should have broken its contract and that *thereby* the plaintiff's force were *necessarily* and *unavoidably* kept idle, and that the plaintiff suffered damage from this cause. Had more specific instructions been desired, the attention of the court should have been called to it by way of request to amplify and particularize.

2. The sixth ground of the motion for a new trial takes issue with the court as to what was or was not insisted upon by the plaintiff and the defendant respectively. We understand the court to mean that each party insisted upon something at the trial, and that what each insisted upon was thus and so. This state-

ment must be taken here as correct, inasmuch as the judge neither certifies that it is incorrect nor that he was requested to vary or modify it. The same may be said of the ninth ground of the motion, which makes a like criticism upon the charge of the court as to what the plaintiff insisted upon. It seems to be thought by the learned counsel for the defendant (the plaintiff in error here) that the court was endeavoring to make a summary, not of the plaintiff's claim, but of his testimony. We see nothing to indicate that the court was attempting, in this part of the charge, to follow the plaintiff as a witness, but only to state his position as a party. It was for the jury to determine whether or not what he insisted upon as a party was supported by his own or any other testimony.

3. The seventh ground of the motion states that the testimony did not show what part of the time, if any, during delays was actually lost by the force. We think the evidence affords *data* upon which to make a fair computation of the amount of damages resulting from lost time; at all events, that the minimum, if not the maximum, of loss could be ascertained.

4. The eleventh ground of the motion excepts to the court's charge touching the agreement of the parties made pending the trial as to admitted and contested items, the court saying: "You should credit the plaintiff with what is admitted in this agreement to be due him, and charge him with the amount admitted to have been received by him, that is, credit him with $19,634.96, and charge him with $10,143.50." The complaint is, that this limited the amount admitted by the plaintiff to $10,143.50, and prevented the jury from considering all of the $9,142.50 admitted in the declaration and the plaintiff's testimony. This criticism is altogether unfounded. The court was charging specifically upon the agreement made at the trial, and its effect as to two ag-

v 86-5

gregate sums, the one to be placed on one side of the account, and the other on the other side. Surely what the court said was literally correct, and to our minds it would carry no implication as to how any item or items not included in the agreement were to be dealt with. It is not pretended that an express negative was put upon the allowance of any sum admitted in the declaration or in the plaintiff's testimony, and to imply such a negative, the jury would have to place upon the court's language a strained and distorted construction. We do not mean to say that the agreement itself would not bear that construction, for we rather think it would, so far as any admissions in the declaration are concerned, one of the purposes of the agreement seeming to be to group together all the admitted and disputed items for and against each party. We can discover no clear reason why the court, the counsel and the jury should not have looked to the agreement for all the material, or rather for a description of it, out of which the full account between the parties was to be constructed. But what we rule is, that this part of the charge was not erroneous.

5. The twelfth ground of the motion complains that the court charged in a way to exclude from the consideration of the jury the effect of an admission made in the declaration upon certain items, one for $950, the other for $745, claimed by defendant. If either of these items was included in the admission of the gross sum of $9,142.50 set out by the plaintiff in his declaration, we think the attention of the court should have been called to that fact. It does not appear that the court knew or was informed that these items entered into that gross sum, or that the defendant claimed that such was the fact. The court, thinking no doubt that the question of the allowance of these items turned on the evidence and not on the pleading, instructed the

jury accordingly, and if they were in fact covered up and comprehended in a larger sum, so as not to be recognizable without an examination of the pleadings, why did counsel remain silent and forego the benefit of an admission which, as now suggested, was contained in the declaration itself? We can find no such admission in the declaration, that is, none which identifies these items as matters included in the gross sum of $9,142.50 designated in the declaration as cash paid by the defendant to the plaintiff, without the specification of any particulars. The declaration is silent as to particulars.

6. According to *Gholston* v. *Gholston*, 31 *Ga.* 625, it was not correct practice to send out with the jury the written charge of the court read to them from the bench. There is no statutory provision in this State on the subject, and that being so, were we to follow the rule which prevails in some jurisdictions, we could hold the matter subject to the discretion of the court. 2 Thompson on Trials, §2583. The reason given by the trial judge for allowing the charge to go out in this instance, was that it had in it many statements as to amounts, etc., which the jury could not remember and for which they would want to make reference to the charge. We find this to be so, and as no objection was made by counsel to sending the charge out, we think it is no cause for a new trial. Indeed, some of us regard it as a wholesome practice for every case. But we all agree that at most it is only an irregularity, and that the omission to object was a waiver of objection. *Bass* v. *Winfry*, 20 *Ga.* 634, opinion by Benning, J.

7. It is complained that the court charged the jury, in speaking of the credibility of witnesses, to consider the character of each witness and his opportunity to know the facts about which he testifies. There was no testimony as to the character of any witness. For this

reason the charge, while it was irrelevant, could not have been more hurtful to one party than to the other. There is no cause for treating it as prejudicial to the defendant rather than to the plaintiff. It would not be sound law to grant a new trial on account of an irrelevant charge not necessarily hurtful to either party, unless it was likely to have influenced the verdict. In this case, we can see no reason for suspecting that this allusion to character had any influence whatever. Indeed, on account of certain facts in the record, the defendant has much less cause to complain of it than the plaintiff. It will be observed that the charge made no express reference to any knowledge which the jurors themselves might have touching the character of witnesses, and in this respect it differs from the cases of *Anderson* v. *Tribble*, 66 *Ga.* 584, *Head* v. *Bridges*, 67 *Ga.* 227, and *Howard* v. *The State*, 73 *Ga.* 84. We were requested to review these cases, in so far as they sanction the mere personal knowledge of jurors touching the character of witnesses as a factor in the determination of credibility. We are strongly inclined to the opinion that in this respect they are unsound, but we can make no authoritative ruling upon the question in disposing of the present case; for the charge now under examination, fairly construed, does not present the point. It was inapplicable in its terms, for the reason that there was no evidence to which the jury could properly apply it, and they were not instructed to apply it to their own information or personal knowledge. This is all we deem necessary to say on this topic at present.

8. The court erred in charging the jury as set out in the fourth ground of the motion for a new trial, in one particular, which was, after saying that if the jury found that the four miles of railway extending from Rome to the Rome and Decatur junction was included

in the contract, they would give the plaintiff credit for $1,200, in adding, "of course subject to a counter-charge for the reasonable cost of the work." We think there was no evidence to warrant the jury in looking to the reasonable cost of the work for a measure of the correct counter-claim against this $1,200 item. If this four miles were embraced in the contract, the plaintiff would be entitled either to the difference between $1,200 and the cost to the defendant of doing the work by convict labor, or to the difference between $1,200 and the price of the convict labor, as contended for by the defendant. There was evidence tending to show that the reasonable cost of the work was $1,100, the plaintiff having testified that his profits on the work done by himself averaged $25 a mile. If the jury followed the instructions of the court, they most probably allowed the plaintiff $100 for these four miles. We cannot ascertain from the evidence, certainly not without a great deal of study and calculation, what it actually cost the defendant to do this work by convict labor. Nor can we make an accurate estimate of how much the convict labor, estimated at the price contended for by the defendant, would amount to for this particular part of the work. But on no basis of calculation which the evidence anywhere points out, would the cost of doing this work at the prices claimed by the defendant for convict labor, exceed $300 a mile, the compensation which by the original contract was to be paid to the plaintiff for doing it. We think the results of the error in the charge of the court may be wholly eliminated by assuming that the jury could not have allowed, and did not allow, for this item more than $25 per mile, as the difference between the reasonable cost given them as a standard in the charge of the court and the $300 per mile which the plaintiff would have been entitled to receive, had he done the work himself. We think,

therefore, that if a new trial were had on account of this error, it would not involve exceeding $100 as matter fairly in dispute, on which the error of the court could have had any influence. Rather than order a new trial unconditionally on account of this disputed item, we prefer to reverse the judgment overruling the motion for a new trial, with direction that if the plaintiff will write off from the verdict one hundred dollars and the interest recovered on that sum, the judgment, modified to conform thereto, then stand affirmed.

9. The newly discovered evidence is fairly open to the objection that it is cumulative, and to the further objection that there was no full diligence in procuring some of it in time to be used on the trial. With these infirmities, we cannot hold it good cause for a new trial. Touching the payment covered by the newly found receipt, there was evidence at the trial from both sides, and there is no certainty or even probability that the jury did not follow the defendant's evidence as to the amount of the payment, which was the same amount shown by the receipt. *Judgment reversed, with direction.*