## THOMPSON *v.* RIGGS.

No. 13936. MARCH 14, 1942.

*George M. Johnston, Cohen Anderson,* and *W. G. Neville,* for plaintiff in error. *John F. Brannen,* contra.

ATKINSON, Presiding Justice. Walter Sanderson died on November 27, 1930, his wife surviving. They did not have a child. In 1934 Mrs. Sanderson married J. J. Thompson, and died intestate on October 23, 1939, leaving an estate consisting of farm lands and personalty, and leaving no debts. Thompson took possession of the estate as sole heir at law. In 1940 Mrs. Carl Riggs

instituted an equitable action against Thompson, seeking a decree of specific performance of a contract for adoption, and to establish an interest in the estate as an heir at law on the basis of being a child of the deceased by "virtual adoption," and to have an accounting. In addition to the above, the allegations of the petition as amended contained statements relied on for support of the claim of adoption, substantially as follows: In 1909 the petitioner, then Mildred Elena Richardson, an infant about six months old, whose mother had died, was by oral agreement given by her father, J. R. Richardson, and his parental control completely surrendered, to Walter Sanderson and his wife who afterwards became Mrs. Thompson, on consideration of their agreement to adopt her as their child, take her into their home, rear and educate her, and that she should inherit from them at death. The Sandersons received her and changed her name to Leola Sanderson, by which she was afterwards known and married. She did not know until she was grown that the Sandersons were not her natural parents. They always recognized her as their child, and she recognized them as her parents. She rendered them services and attention that are due from a daughter to her parents. She married in 1925 with assent of her foster parents, and with her husband continued to live with them until Mr. Sanderson died, and, after his death, with Mrs. Sanderson until her marriage with Mr. Thompson (which occurred in 1934 after petitioner attained majority) and for some time after that marriage, when on account of disagreeable "attitude" of Mr. Thompson in regard to "the farming interest, . . they left the place." Mrs. Sanderson ratified the oral agreement between Mr. Sanderson and petitioner's father. In paragraph 2 of the petition, after stating facts relied on to establish virtual adoption, it was alleged that petitioner's father and Walter Sanderson had signed a paper setting forth the stipulations between the parties, but that the paper had been lost; and in paragraph 7 it was alleged that certain money left to petitioner by her grandfather had been received by Mr. Sanderson as her guardian. Both of these paragraphs were stricken by amendment, and in lieu thereof paragraphs 20 and 21 were added. The petition thus amended alleges the case substantially as above set forth.

1. The allegations are sufficient, as against a general demurrer, to charge "virtual adoption" of the child by both of the alleged

foster parents, carrying with it right of inheritance from Mrs. Sanderson. *Crawford* v. *Wilson,* 139 *Ga.* 654 (78 S. E. 30, 44 L. R. A. (N. S.) 773) ; *Lansdell* v. *Lansdell,* 144 *Ga.* 571 (87 S. E. 782) ; *Copelan* v. *Monfort,* 153 *Ga.* 558 (113 S. E. 514) ; *Chamblee* v. *Wayman,* 167 *Ga.* 821 (146 S. E. 851) ; *Columbus Bank & Trust Co.* v. *Jones,* 176 *Ga.* 620 (168 S. E. 561) ; *Fussell* v. *Daniels,* 179 *Ga.* 462 (176 S. E. 369). The case differs on its facts from *Boles* v. *Eddleman,* 189 *Ga.* 551 (6 S. E. 2d, 589), as set forth in the second count of the petition in that case, in which no agreement was alleged, as in the instant case, that the person would adopt the child, so that it would inherit from such person. The case differs also from *Scott* v. *Scott,* 169 *Ga.* 290 (150 S. E. 154), where the institution surrendering the children was not authorized by law to execute a contract for their adoption. Accordingly the judge did not err in refusing to dismiss the action on general demurrer to the petition as amended.

2. When the case came on for trial before the jury the defendant introduced the paper which the plaintiff had alleged in paragraph 2 of her petition was lost. That paper was as follows: "This indenture executed this 20th day of October, 1909, between John R. Richardson of the County of Bulloch and State of Georgia, of the first part, and J. W. Sanderson of the County of Bulloch and the State of Georgia, of the second part, witnesseth, that the said John R. Richardson for and in consideration that the said J. W. Sanderson is to support and maintain and educate the minor child Eldrid Elena of the said John R. Richardson, and have control of her until she arrives at the age of twenty-one years old, and the said John R. Richardson hereby binds the said minor child to the said J. W. Sanderson for the time until the said minor Eldred Elena, daughter of the said J. R. Richardson, shall be of the age of twenty-one years. In witness whereof the said parties have hereto set hands and seals." This paper was duly signed by J. R. Richardson and J. W. Sanderson.

By reason of the introduction of this paper, admitted to have been executed in consummation of the parol understanding alleged to have been had in behalf of plaintiff by her father with Mr. and Mrs. Sanderson, there arose on the trial, and have been presented in grounds 1, 5, 6, and 7 of the motion for new trial, questions based on this agreement which are controlling. All oral ne-

gotiations preceding or accompanying execution of a written contract are merged in or extinguished by such contract. Code, § 38-501, and annotations under Negotiations; *Roberts* v. *Investors Savings Co.*, 154 *Ga.* 45 (113 S. E. 398), and cit. This principle was recognized and stated in a virtual-adoption case somewhat similar on its facts (*Rieves* v. *Smith*, 184 *Ga.* 657 (4), 192 S. E. 372, 112 A. L. R. 368), where it was said: "Such written contract of the mother being plainly one of apprenticeship, and wholly excluding any purpose or intent thereby to enter upon a contract of adoption, the plaintiff would not have been entitled to recover on the first count under the pleaded oral contract of adoption between the decedent and the plaintiff's mother, except that there was evidence to the effect that, after the plaintiff's majority, the decedent told him that he was the adopted son of the decedent, that the decedent had agreed with the mother of the plaintiff to make him the sole heir of the decedent and give the plaintiff his entire estate at his death, that everything the decedent had was his, and he would get the decedent's property after the death of the decedent, and that the plaintiff, his wife, and children had thereafter for more than twenty years performed the alleged services. There was no testimony to indicate that the plaintiff ever saw or knew of the written contract of apprenticeship made by his mother. Upon the averments of the first count, the jury being authorized to find in favor of the plaintiff under these alleged conversations and services rendered thereunder after majority, it was error to direct in effect a verdict for the defendant by charging that if the jury found that the written contract of apprenticeship was made by the mother, the plaintiff could not recover." But in that case a different result was reached by reason of a separate contract made by the apprentice after attainment of his majority subsequently to the contract of apprenticeship, and acted upon by the parties. In the instant case no claim is made that any new contract was made by or in behalf of plaintiff after the writing. And subsequent conduct of the parties which had the appearance of recognizing the status of plaintiff as a child, which in some of the virtual-adoption cases has been considered vital, would be just as consistent with the relationship of an apprentice as with adoption. See *Taylor* v. *Boles*, 191 *Ga.* 591 (13 S. E. 2d, 352). Thus from the rule stated, all prior negotiations having been merged into the written contract, anything

varying its terms or enlarging its obligations could not prevail against its plain provisions; and accordingly the judge erred in charging the jury in such a way as permitted them to decide the question whether there were two contracts, and, if so, which should prevail. This is true because the law itself merged the agreements as one transaction. The judge erred also in otherwise giving effect or permitting the jury to give effect to such parol agreements in so far as they conflicted with the written contract, as complained of in special grounds 1, 5, 6 and 7 of the motion for a new trial.

3. Ground 2 of the motion for new trial complains of the admission, over timely objection, of testimony by the plaintiff in regard to transactions and conversations by the plaintiff with Mrs. Thompson with whom the alleged contract of adoption was claimed to have been made. The suit is essentially against the husband as the personal representative as sole heir of his deceased wife. If he were not treated as such, the plaintiff could not prevail in her effort to enforce the contract of adoption, since the very relief sought by the plaintiff is the enforcement of alleged contractual relations made in her behalf with the deceased person during her life. The suit is in substance for specific performance of a contract made in her behalf with the deceased. The suit being of such character, the petitioner was incompetent to testify, under the Code, § 38-1603. *Johnson* v. *Champion*, 88 *Ga.* 527 (15 S. E. 15) ; *Gunn* v. *Pettygrew*, 93 *Ga.* 327 (20 S. E. 328) ; *Killian* v. *Banks*, 103 *Ga.* 245 (29 S. E. 971) ; *Willis* v. *Bonner*, 136 *Ga.* 720 (71 S. E. 1048) ; *Crawford* v. *Wilson*, supra; *Donald* v. *Groves*, 160 *Ga.* 163 (126 S. E. 583). What is here held applies also to the rulings of the court complained of in ground 8, and disposes of the question raised in ground 9, relating to the charge of the court. The decisions in *Boynton* v. *Reese*, 112 *Ga.* 354 (37 S. E. 437), *Rudolph* v. *Washington*, 146 *Ga.* 605 (91 S. E. 560), *Norton* v. *Brown*, 173 *Ga.* 146 (2) (159 S. E. 702), and similar cases are distinguishable in that in those cases the parties permitted to testify were not, as in the instant case, seeking to enforce a contract or liability against the deceased person and to have such liability satisfied out of such person's estate.

4. The court did not err, as urged in ground 3 of the motion for new trial, in admitting testimony explanatory as to reasons why the plaintiff removed from the Thompson home.

5. The testimony complained of in ground 4, which tended to describe the attitude of the defendant Thompson in connection with the funeral of the deceased Mrs. Thompson, was irrelevant and calculated to prejudice the jury, and should have been excluded.

6. Ground 10 complains of the omission by the judge to give, without request, a specified charge relating to the defendant's right to reimbursement for improvements of the land. While the answer contained allegations in respect to such alleged advancements and improvements, there was no prayer on behalf of defendant for any form of relief in reference thereto; and thus the pleadings did not require such a charge, and the judge did not err in omitting it.

7. On application of the foregoing principles, the court erred in overruling the motion for new trial.

*Judgment reversed. All the Justices concur.*