SMITH *et al.* v. SMITH.

No. 16894.   January 13, 1950.   Rehearing denied February 17, 1950.

*J. P. Dukes,* for plaintiffs in error.

*J. T. Grice,* contra.

ALMAND, Justice. (After stating the foregoing facts.) ■ Special ground 1 complains that the court erred in permitting the plaintiff to testify as to a conversation he had with his deceased brother, E. C. Smith, in which the plaintiff was allowed to relate the contents of an oral agreement had with the deceased as to a boundary line between their respective properties; the ground of objection being that, under the provisions of Code, § 38-1603 (1), the plaintiff was not competent to testify. It appears without dispute that the defendants hold title to the property adjoining the plaintiff's property, as heirs at law of E. C. Smith, and they were being sued as individuals and not as rep-

resentatives of E. C. Smith's estate, and no relief was claimed against said estate.

Under previous rulings of this court, the plaintiff was a competent witness to testify in his own behalf as to a conversation which he had with the deceased. *Boynton* v. *Reese,* 112 *Ga.* 354 (3) (37 S. E. 437); *Rudulph* v. *Washington,* 146 *Ga.* 605 (1) (91 S. E. 560); *Stevens* v. *Stevens,* 204 *Ga.* 340 (4) (49 S. E. 2d, 895). The authorities relied on by the defendants (*Willis* v. *Bonner,* 136 *Ga.* 720, 71 S. E. 1048; *Thompson* v. *Riggs,* 193 Ga. 632, 19 S. E. 2d, 299), are not applicable here, for the reason that the actions in those cases were in effect against the estates of deceased persons.

■ Special ground 2 complains that the court erred in admitting in evidence a blueprint of a survey made by a civil engineer in August, 1947, which purported to show the property lines and corners between the tract owned by the plaintiff and the tract owned by the defendants, as well as the other boundary lines of the plaintiff's property, the objection being that the map did not show the southern boundary as being "Big Bay," as called for in the deed.

In special ground 3, the defendant contends that the court erred in admitting in evidence another plat made by the same civil engineer in March, 1949; the objection being that it was not complete because it did not designate "Big Bay," referred to in the deed to the plaintiff as being a part of the southern boundary of the plaintiff's property.

These two grounds will be considered together. From the evidence, it appeared that W. M. Sheppard, who testified for the plaintiff, was a licensed surveyor, and he made both plats; and that the plat of August, 1947, was made at the request of the plaintiff, and purported to show the boundaries of lot No. 6, which adjoins lot No. 7, the property of the defendants; lot No. 7 being the southern boundary of lot No. 6, and the line between these lots being the one which is in dispute. He testified that it represented the line which the plaintiff pointed out to him as being the correct line, and that such points and lines are correctly identified and marked on the plat which he made. He further testified with reference to a plat which was made by him in March, 1949, and which included some of the land included

in the other plat which was shown to be in lot No. 6, and showed the line as contended for by the defendants and the line as contended for by the plaintiff, and left an area of 202.70 acres as a strip of land running between the lines contended for by the respective parties. He testified in detail ·how these lines were run, and identified both plats as representing the true and correct facts as found by him.

Neither of the deeds from the executors, one conveying lot No. 6 to the plaintiff, and one conveying lot No. 7 to the defendants' predecessor in title, nor the map referred to in these deeds, gave a complete or accurate boundary line between these two lots. The testimony of the surveyor was that he made the plat of March, 1949, not to show the true or correct lines according to the deeds, but that the plat was a correct representation of the lines as contended for by the plaintiff and the defendants, and represented the strip of land running between the two lines.

Where a civil engineer testifies that he made certain surveys of land and that a plat which he made is correct, such plat is admissible in evidence. *Wooten v. Solomon,* 139 *Ga.* 433 (2) (77 S. E. 375); *Roberts v. Atlanta Cemetery Assn.,* 146 *Ga.* 490 (3) (91 S. E. 675); *Herrin v. Bennett,* 200 *Ga.* 53 (1) (36 S. E. 2d, 145).

■ Special grounds 4, 6, and 7 complain that the court erred in charging to the jury the plaintiff's contentions. In these grounds, the defendants set out three excerpts from the charge, wherein in substance the court charged that the plaintiff contends that the line between the respective lots, as well as one corner, were agreed to between the plaintiff and his brother, E. C. Smith, and that for more than seven years prior to the death of his brother said brother acquiesced in the line as being the true line, and that, in pursuance of the agreement which he, the plaintiff, had with his brother, the plaintiff had a survey made, which started at the edge of the bay where the old line stopped, and continued on through the bay and to the corner where the plaintiff contends he and his brother had agreed the corner should be.

The defendant contends that these charges were erroneous, because the evidence was not sufficient to authorize the jury to find any definite line that was claimed to be the agreed line; because the court instructed the jury that the line claimed by the

plaintiff was the correct line, and there was no evidence of an agreement between the parties as to a definite corner.

All of these excerpts from the charge on which error was assigned are a part of the court's outline of the contentions of the plaintiff. A reading of the entire charge shows that the trial judge fully outlined the contentions of both parties, and stated, "Now, gentlemen, those are the contentions of the parties as I understand them in this case." Thereafter, he fully charged the law relative to the issues made by the evidence. "In stating to the jury what the parties respectively insist upon, the court is to be understood as referring to their contention at the time of the trial as parties, and not to their evidence as witnesses." *Chattahoochee Brick Co.* v. *Sullivan*, 86 *Ga.* 50 (2) (12 S. E. 216). See also *Tietjen* v. *Dobson*, 170 *Ga.* 123 (1, 2) (152 S. E. 222, 69 A.L.R. 1408). We find these exceptions to be without merit.

■ Special ground 5 complains that the court erred in refusing to allow in evidence the testimony of S. L. Smith, a witness for the defendants, as to what E. C. Smith, deceased, the predecessor in title of the defendants, said to him as to where the boundary line between lots 6 and 7 was located. It is contended that this evidence was admissible, not as a conversation with the deceased, but as evidence of the physical fact as to where the line was located.

Declarations of a person since deceased, wholly in favor of the declarant and not a part of the res gestae, are mere hearsay and not admissible in evidence. *Drawdy* v. *Hesters*, 130 *Ga.* 161 (2) (60 S. E. 451); *Durrence* v. *Groover*, 160 *Ga.* 680 (3) (129 S. E. 29). The court properly rejected this evidence.

■ Special ground 9 complains that the court erred in entering the final decree, because it does not follow the pleadings or the evidence, and because the decree sought to set up title in the plaintiff to land not described in the deed and the original blueprint offered, and incorporated in the judgment a plat which was incomplete because no lines had been marked, corners placed, or lines blazed.

The fact that a judgment does not follow and is not authorized by the verdict, or is not authorized by the pleadings, is not a good ground of a motion for a new trial. *Manry* v. *Stephens*,

190 *Ga.* 305 (1) (9 S. E. 2d, 58). If the judgment or decree is erroneous or illegal, direct exception should be taken at the proper time. *Berry* v. *Clark*, 117 *Ga.* 964 (4) (44 S. E. 824); *Atlanta* v. *Carroll*, 194 *Ga.* 172 (3) (21 S. E. 2d, 86); *Braswell* v. *Palmer*, 194 *Ga.* 484, 488 (6) (22 S. E. 2d, 93). Therefore, this not being a proper ground of a motion for new trial, we cannot pass on the contentions made in this ground.

There was no error in the charge complained of in special ground 8.

■ We turn now to the general grounds. It appears from the brief that the plaintiff waived his claim for damages, and the defendants made no contention that there was any evidence which would have authorized the court to submit to the jury the claim for damages of the defendants; and the court properly submitted to the jury the one and sole issue as to whether or not the line claimed by the plaintiff was agreed upon by himself and the deceased, E. C. Smith, and whether or not the line agreed upon had been acquiesced in for a period of seven years or longer as the true dividing line.

A brief summary of the evidence discloses the following: In 1920, one J. M. Smith died testate, leaving several children and a large estate of land in Bryan County. He named two of his sons, Joseph H. and Robert Lee Smith, as executors, and directed that they should with a surveyor divide his land into seven different lots and sell them separately at public sale. The executors cut the land into seven lots, and at a public sale the plaintiff bought lot No. 6, supposed to contain 782 acres, and his brother, E. C. Smith, the predecessor in title of the defendants, bought lot No. 7, supposed to contain 894 acres. Before the sale was had, a survey was made of the estate and a plat made, but on account of high water in a swamp, called Big Bay, at the time of the survey, the surveyor did not run or mark an accurate dividing line between lots Nos. 6 and 7. This plat which the executors caused to be made was referred to in the deeds that were made to lots 6 and 7. The deed to the plaintiff described his tract as being lot No. 6 containing 782 acres, and as being bounded by lands of certain other parties, and the south boundary was described as lot No. 7, and Big Bay. The deed to E. C. Smith described his tract as lot No. 7, and as being

bounded on the north by lot No. 6. The plat made by the executors, which was introduced in evidence, was not drawn to scale, and though the lines were marked off, which show the boundaries of lot No. 6, the plat did not indicate any marked corners, nor any distance between the indicated corners of the lot. This plat shows Black Creek as being the northeast boundary, and that its northeast boundary line corners with lot No. 7 near a point where Black Creek empties into the Ogeechee River, and then appears a line which divides lots 6 and 7, and places it at a point indicated in the plat as Big Bay, but does not indicate any corner where the southeast boundary line of lot No. 7 meets the southwest boundary line of lot No. 6.

The plaintiff went into possession of his tract, and E. C. Smith took possession of his tract. The plaintiff testified: In 1926 he discovered E. C. Smith cutting trees, and told him the trees were on his, the plaintiff's, property. E. C. Smith agreed that he was over his property line, and the parties then discussed between themselves as to where the line should be determined as between their respective lands. They then and there agreed that the line which had been located by the executors at the time their survey was made would corner across Big Bay about the second bend from the mouth of Black Creek where it entered into the Ogeechee River; that this would be a starting point; and that this line would cross between Brimstone Lake and Cow Pen Lake, and Cow Pen Lake would be on the plaintiff's property and Brimstone Lake would be on E. C. Smith's property. Most of the property in the area where this boundary line was agreed upon consisted of lakes, swamps, and timber, and none of it was cultivatable land. Subsequently to this agreement in 1926 and until shortly before the filing of this action, the plaintiff had cut timber and pulpwood on his side of the agreed line, and exercised full control at all times up to the agreed line, and E. C. Smith during his life recognized this line by not removing timber beyond it. Further control of his land was exercised by the plaintiff, in that those who obtained fishing or hunting rights on his side of the agreed line did so by obtaining the consent of the plaintiff; and E. C. Smith during his life recognized this agreed line as being the true dividing line. In 1947 the plaintiff employed a surveyor to make a plat of lot No. 6, and a boundary line between lots

6 and 7 was surveyed and a plat made to represent the line that had been agreed on between the plaintiff and E. C. Smith, and the survey as made showed that lot No. 6 contained 639 acres, as compared to the deed, which showed the tract to contain 782 acres. In March, 1949, the surveyor made another plat, which represents the lines as contended for by the plaintiff between lots 6 and 7, and the lines contended for by the defendants; and this plat shows that, if the defendants' contentions are correct, the plaintiff would lose an additional 202 acres.

Several witnesses for the plaintiff testified that during the life of E. C. Smith, in conversations with him, he admitted that the line as contended for by the plaintiff was the true boundary line between lots 6 and 7. Several witnesses testified that for many years during E. C. Smith's life they obtained fishing privileges in Cow Pen Lake from the plaintiff. There was evidence that subsequently to 1926 and for more than seven years thereafter the plaintiff or his agents cut timber and worked trees for turpentine on the property that the plaintiff claims to belong to lot No. 6.

Several witnesses testified for the defendants that they had cut timber or worked trees for turpentine on the property of E. C. Smith up to the line claimed by the defendants as being the boundary line between lots 6 and 7. Several persons testified that for many years they had fished in Cow Pen Lake, and in doing so obtained permission from E. C. Smith. There was evidence before the jury that the plaintiff admitted to several witnesses that the line between the lots was where the defendants contended the true line to be.

The evidence was undisputed that the defendants had cut timber and cordwood in the strip of land lying between the two lines contended for by the parties.

Thus we find, on reading all the evidence on the issue of where the true line was between the two lots, the testimony of many witnesses that the line was located where the plaintiff claims the line to be, and positive testimony from many witnesses for the defendants that the true line was where the defendants contended it to be. On this issue the evidence is in direct conflict. The evidence before the jury was such that it would have been sufficient to support a verdict for either party. The jury had before them the witnesses, with the power and duty to re-

solve conflicts in the testimony by passing upon the credibility of the witnesses, resolving all reasonable doubts in the testimony. There being no error of law committed by the trial court, and the evidence being sufficient to support the verdict rendered, we will not disturb the judgment of the trial court in overruling the defendants' motion for a new trial.

Our view in regard to a situation such as here is well stated in *Bussey* v. *Moses*, 48 *Ga.* 120, 123, where this court said: "It would be a violation of the oft-repeated rulings of this court to reverse the judgment of the judge of the superior court in this case. To a stranger, who does not know the witnesses, the testimony is pretty fairly balanced. And, under the mode of trial provided by law, the proper tribunal for deciding as to the credibility of the witnesses has passed upon it, and we have no power to alter the verdict." See *Smith* v. *Merck*, 206 *Ga.* 361 (4) (57 S. E. 2d, 326), and authorities cited in that division of the opinion.

*Judgment affirmed. All the Justices concur.*