HENRY MUELLER v. FRED SUTTER, Appellant.

**Partnership:** CONSTRUCTION OF DISSOLUTION CONTRACT. Three men constituted a partnership. One bought out the interest of the other and agreed to assume what the retiring partner owed the firm "in the sum of $268." The amount held by the firm against the selling member amounted to eight hundred and nine dollars. *Held*, that while, ordinarily, the sale of an interest in a partnership adjusts what the seller owes the firm, that under the circumstances at bar, the difference between two hundred and sixty-eight dollars and eight hundred and nine dollars was not extinguished by the contract under which the one member retired.

*Appeal from Carroll District Court.*—HON. GEORGE W. PAINE, Judge.

SATURDAY, OCTOBER 19, 1895.

Action upon a promissory note. Trial to the court. Judgment for plaintiff. Defendant appeals. —*Reversed.*

*B. I. Salinger* for appellant.

*D. Rogers* and *M. W. Beach* for appellee.

Kinne, J.—I.   March 5, 1892, one Lebeck, plaintiff, and the defendant, entered into a co-partnership for the purpose of carrying on a general mercantile business in the town of Manning, Iowa. On November 15, 1893, defendant purchased of Mueller his interest in said firm for two thousand seven hundred and eighty-nine dollars. Said contract of purchase was evidenced by a writing signed by said parties, which, among other things, provided that "the party of the first part has this day bargained and sold unto the party of the second part his undivided one-third interest in and to the general stock of merchandise, including fixtures and store furniture situated in the store building and basement thereunder on lot 2 in block 6 in Manning, Iowa; also, all of said first party's interest in all notes and book accounts now and heretofore belonging to the mercantile firm of Lebeck, Mueller & Sutter, for the sum of two thousand seven hundred and eighty-nine dollars. And the second party hereby agrees to purchase said interest in and to said stock of goods, store fixtures and furniture, and notes and book accounts, agreeing to pay therefor the sum of two thousand seven hundred and eighty-nine dollars, which sum shall be due and payable to said first party on November 23, 1893. In further consideration of this agreement, the said first party of the first part hereby agrees to pay on or before January 1, 1894, the

present account now owing the firm of Lebeck, Mueller & Sutter by Mrs. Henry Blocker of Manning, Iowa.    In further consideration of this
agreement, the said second party agrees to pay
the account of said first party, in the sum of two hundred and sixty-eight dollars and seventy-six cents,
owing to firm of Lebeck, Mueller & Sutter." Afterward
defendant paid plaintiff one thousand five hundred
dollars in cash on said purchase, and on December 11,
1893, executed and delivered to plaintiff his promissory note for one thousand two hundred and eighty-
nine dollars, being the balance due for his interest in
said firm.  In January, 1894, plaintiff brought this suit
to recover the amount due upon said note.   Defendant
answered, claiming that, on the day plaintiff sold his
interest to the defendant, he was indebted to the firm
of which he was a member in the sum of eight hundred
and nine dollars and forty-three cents, for goods and
merchandise delivered to him by said firm; that, by the
terms of said written contract, it was agreed that
defendant should assume and pay off said account to
the extent of two hundred and sixty-eight dollars and
seventy-six cents, which he had done; that the remainder of the account, five hundred and forty dollars and
sixty-seven cents, was unpaid, and was defendant's
property.   It was also averred that defendant had, by
mistake, overpaid plaintiff in the sum of five dollars.
Defendant also pleaded a tender of the amount he
claimed was due plaintiff, after deducting said five
dollars and said five hundred and forty dollars and
sixty-seven cents.   Plaintiff, in reply, denied all the
allegations in said answer and counterclaim.   The
case was tried to the court, a jury having been waived,
and a judgment rendered for plaintiff for the full
amount claimed, less the five dollars overpaid.

II. On the trial, defendant offered in evidence certain exhibits, being pages from ledgers used by the

firm of Lebeck, Mueller & Sutter, and offered to show that Exhibits B and C consisted of two pages of the ledger of the firm for the year 1892, and that the entries on said pages were in plaintiff's hand writing; also that plaintiff purchased of said firm from March 4, 1892, to March 4, 1893, goods and merchandise which, exclusive of all credits, amounted to five hundred and thirty-eight dollars and eighty-eight cents, and that no part of said account had been paid, and that defendant now owned said account. By another exhibit, it was sought to show that between March 21, 1893, and September 28, 1893, plaintiff purchased of said firm goods and merchandise in the sum of two hundred and sixty-eight dollars and seventy-six cents. It does not appear that this testimony was objected to because the proper foundation had not been laid, as required by the Code. The objection relied upon by counsel, and, as shown by the record, and considered by the court, was that it was an attempt to vary the terms of a written contract, and hence incompetent, irrelevant, and immaterial. These objections were sustained, and exceptions noted to the rulings. We understand, then, that the only question we need determine is the effect, under the law, and the facts of this case, which should be given the written contract the material parts of which we have heretofore set out.

The law is that, when one partner transfers all his interest in the assets of the firm to a continuing member of the firm, and receives in payment or in part payment thereof the note of the purchaser, the maker of the note cannot set off an account apparently due the firm from the member whose interest was transferred. The parties, however, may by contract provide otherwise. *Thompson v. Lowe,* 111 Ind. 272 (12 N. E. Rep. 476; *Houk v. Walker* (Ind. Sup.) (30 N. E. Rep. 1080). We are cited to no case where the facts are like those in the case at bar. It may be conceded

that, ordinarily, the effect of such a sale, when there is no provision made to the contrary, is to transfer to the purchaser the seller's interest in the assets of the partnership; and it will be presumed that an account held by the firm against the member selling out was adjusted in determining the value of said member's interest. His interest would be greater or less, depending upon the fact, and the amount, of his indebtedness to the firm over its indebtedness to him. This presumption obtains until it is rebutted, and these principles of law are not in controversy between counsel.

The question is, does the contract rebut this legal presumption? We think it does. It will be observed that, in the absence of any agreement in the contract by Sutter to pay the two hundred and sixty-eight dollars and seventy-six cents due from Mueller to the firm, Sutter would have been liable therefor, as well as for the five hundred and forty dollars and sixty-seven cents which Mueller owed the firm; that is, in the absence of the agreement on Sutter's part to pay the two hundred and sixty-eight dollars and seventy-six cents, the law would presume that all accounts of the retiring member due the firm were adjusted in the trade between Mueller and Sutter in ascertaining the value of Mueller's interest in the firm. The parties, then, in providing that Sutter should pay two hundred and sixty-eight dollars and seventy-six cents of Mueller's indebtedness to the firm, were placing a provision in their contract which had no force or effect whatever, inasmuch as the law presumed, in the absence of anything to the contrary, that all of Mueller's indebtedness to the firm had been taken into account in determining the actual value of his interest which was sold to Sutter. Now, it is our duty, if possible, to give force and effect to all of the language of the contract. The presumption is that these parties knew the law, and that they made their contract in

view of what the law was.  There must have been some object in inserting the provision requiring Sutter to pay two hundred and sixty-eight dollars and seventy-six cents of Mueller's indebtedness to the firm. They knew that the law required Sutter to do that without any provision in the contract requiring it. What, then, was the real intent of the parties in thus providing?  It seems to us it was to fix the sum or amount of Mueller's indebtedness to the firm which Sutter should pay,—to point out just what amount of Mueller's debt to the firm they had taken into consideration in ascertaining the value of his interest in the firm.  In no other way can the language of the contract be construed so as to give it all force and effect. Sutter was to pay "the account of said first party in the sum of $268.76," owing to the firm.  It occurs to us that the wording of this contract is such as to justify the conclusion that when the parties stipulated, as they did, for a payment of a portion of the account held by the firm against Mueller, and fixed the sum thus to be paid, it is a natural, if not necessary, inference that they meant to exclude from the operation of the rule of law heretofore mentioned the amount of said indebtedness, if any, of Mueller, to said firm, which was not expressly mentioned.  By this construction of the contract, we are able to give force and effect to all of the language employed.  Nor do we think the contract is ambiguous.  It is plain.  It is, in effect, an agreement by Sutter to pay two thousand seven hundred and eighty-nine dollars, and, in addition thereto, the account which plaintiff, Mueller, owed the firm, in the sum of or to the extent of two hundred and sixty-eight dollars and seventy-six cents.  Surely, if it was the intention of the parties that Sutter should pay any other account held by the firm against Mueller, or any further sum on any such account, or if

such other account, if any, had been taken into consideration by the parties in determining the value of Mueller's interest in the firm, it is fair to presume they would have mentioned it, as they did the two hundred and sixty-eight dollars and seventy-six cents. That they did not do so, and that they did thus provide for the payment of an account, or part of an account, held by the firm against Mueller, should, it seems to us, be taken to mean that the account in excess of the sum stated to be paid was not intended to be treated as settled by the sum paid by Sutter for Mueller's interest. In this view of the contract, the proposed evidence which was excluded was proper, and should have been received. It did not tend to vary the written contract. We must view the contract, not only in the light of what is written therein, but also having in mind that, from the language used, certain implications are raised, which are as much a part of the contract as that which is expressed therein. *Fawkner v. Wall Paper Co.*, 88 Iowa, 173 (55 N. W. Rep. 200). We are not justified in assuming that these parties, who are presumed to have contracted with knowledge of the law,—which in such cases, in the absence of agreement relating thereto to the contrary, presumes that the debts of the seller to the firm were ascertained and adjusted, at least so far as the purchaser is concerned, and the purchase price agreed upon accordingly,—did the vain and foolish thing of providing for the payment of what the law would have required, in the absence of their agreement, if any other reasonable construction can be placed upon the language of the contract. We think the court erred in excluding the offered evidence. The motion to tax the costs of the amendment to the abstract to appellee will be overruled.—*Reversed.*