STATE EX REL. J. B. SPEED & COMPANY v. TRAYLOR ET AL.

[No. 12,964. Filed November 19, 1930. Rehearing denied March 17, 1933. Transfer denied March 8, 1934.]

292

James T. Walker, Henry B. Walker, Lawrence S. Poston, Paul Y. Davis, and Smith, Remster, Hornbrook & Smith, for appellant.

Robert D. Markel, Joseph H. Iglehart, Albert W. Funkhouser, and Arthur F. Funkhouser, for appellees.

McMAHAN, J.—This is the second appeal in this cause, the first appeal being from a judgment for appellees on issues formed by the complaint and answer in denial and payment. See State ex rel. v. Traylor (1921), 77 Ind. App. 419, 132 N. E. 608. After reversal, appellees filed additional paragraphs of answer numbered 3, 4, 5, 6, and 7. The fourth paragraph was stricken out.

The errors assigned relate to the action of the court in overruling a demurrer to the third paragraph of answer and to the overruling of plaintiff's motion for a new trial. The third paragraph of answer alleges that the relator, J. B. Speed and Co., when it entered into the contract to furnish the material mentioned in the complaint and when the material was furnished, was a foreign corporation and that it had not complied with the act of March 9, 1907, Acts 1907, p. 286, regulating the admission of foreign corporations to transact business in this state, and that by reason of such failure the contract under which the material was furnished was void.

The effect of the failure of a foreign corporation to comply with the above mentioned statute was carefully considered by this court in *Peter & Burghard Stone Co. v. Carper* (1933), 96 Ind. App. 554, 172 N. E. 319, and on the authority of that case we hold the court erred in overruling the demurrer to the third paragraph of answer.

Appellant also contends that the decision of the court is not sustained by sufficient evidence. Appellees contend that the evidence given on the second trial is sufficient to sustain the answer of payment as well as of novation.

The bill of exceptions containing the evidence given at the first trial was introduced and read in evidence on the second trial, with the stipulation that it was to be considered as evidence to the same extent as if it had been testified to by witnesses on the second trial without prejudice as to the rights of the parties to call the same or other witnesses to sustain the issues.

The facts as proven on the first trial are stated in the opinion on the first appeal, and will not be restated except as may be deemed necessary. It was stipulated at the first trial that on August 7, 1916, the board of commissioners and Edgar Traylor and Andrew B. Krempp entered into the contract for the construction of the roads known as the Ferdinand Township Rock Roads, and that Traylor and Krempp, on said day executed the bond sued on, and "that afterwards in accordance with the terms of said contract, the said Traylor & Krempp built and constructed said system of roads and the same was accepted and paid for to said Traylor & Krempp by the Board of Commissioners of said Dubois County, Indiana; that the bond sued on in this action was executed by said Andrew B. Krempp and Edgar Traylor, and the defendants Bomar Traylor, Joseph Berber, Henry Fritsch and George P. Wagner."

The bond is conditioned for the faithful performance of the contract and that Traylor and Krempp would promptly pay all debts incurred by them in the prosecution of the work, including labor, material, and board of laborers.

By the terms of the contract between said contractors and appellant the stone was to be delivered to the contractors at Ferdinand, Indiana, and was to be used by the contractors on the Dubois County roads and was not to be sold or offered for sale by the purchasers. Edgar Traylor testified that he had seen and checked the itemized statement of account filed with the complaint, and found it correct with the exception of certain items amounting to $190.02; that all the stone except the items for $190.02 went into the Ferdinand Township Roads; sometimes they were short of stone on one contract and sometimes on another and that they would shift a car from one road to another and that when such shifts were made, they would be "made up" from other stone that came from appellant.

John J. Davidson, who was the cashier of J. B. Speed & Co., and who had charge of the books and collection of accounts, testified that the items other than the $190.02 items which had been paid, were shipped to Ferdinand for the building of the Ferdinand roads and that the amount due after giving credit for the $190.02 was $2,744.04.

Appellees contend that evidence was introduced on the second trial in addition to that which was introduced on the first trial concerning payment and that the evidence now before us is sufficient to sustain a finding that the debt has been paid. Appellees' contention on the first appeal was that the account had been paid by the acceptance of notes of Traylor & Krempp Company, a corporation. Their contention on this appeal is that the account was paid by

checks. The uncontradicted evidence shows that the value of the stone shipped to Traylor & Krempp and used in the construction of the Ferdinand system of roads was $4,390.66. The stone shipped in October, 1916, amounted to $166.76, was paid for and proper credit given. The stone shipped in November, 1916, amounted to $29.50 and was paid for. The next stone shipped on this contract was in April, 1917, and amounted to $127.92. This was paid for May 10, 1917. The shipment in May amounted to $191.74 and was paid for May 17, 1917. That shipped in June amounted to $279.26 and that shipped in August to $264.31. The total for these last two months being $543.57. The balance of stone purchased for the Ferdinand roads is as follows: In September, $1,301.06; in October, $1,868.66; in November, $149.68; and in December, $11.94. The last item, $11.94, was paid and proper credit given. The purchase for June, August, September, October, and November amounted to $3,862.97. The $196.06, for stone shipped in October and November, 1916, was included in a note for $4,000 which Traylor and Krempp gave in February, 1917. On September 1, 1917, there was owing appellant on open account for the Ferdinand Roads of $532.29, for the Boonville Roads $3,459.43, and on the Jasper account $189.04, a total of $4,180.76.

On February 19, 1917, which was after the incorporation of Traylor & Krempp Company, the parties balanced their accounts and it was found that the open account on that day amounted to $4,266.62. Traylor & Krempp, as partners, on this day, by check, paid $266.62, and gave their note for $4,000. No direction was given concerning the application of $266.62. Appellant, however, applied it on what is designated as the "Boonville job," and not on the Ferdinand account. The uncontradicted evidence is that the $266.62 was

applied in payment of the oldest unpaid items in the open account. The account was balanced again on September 19, as of September 1, 1917. Traylor testified that the amount owing on open account September 1, was $3,459.94; Davidson, a witness for appellant, testified the amount was $3,457.82. Traylor said this was settled by a note for $3,200, and some small checks. Davidson said two checks were given, one for $184.08 and one for $75.86, which with the note balanced the account to September 1, "except $2.06." This note included stone furnished for the Ferdinand roads and has not been paid. The two checks last mentioned were applied on the stone furnished for the Boonville road, and appellees make no claim that they were not properly applied.

Traylor testified that on December 18, 1917, the amount owing on open account plus the $3,200 note and the interest thereon was $11,309.86; that on that day he paid by check $261.87; that two notes, each for $4,000 and one for $3,000 were given and that a credit of $47.99 was given on account of some items that had not been received. These notes were signed by the Traylor & Krempp Company. That in addition of these three notes they also owed two $1,000 notes which both parties had forgotten. The check for $261.87 was credited on the "note account," and no claim is made that proper credit was not given for this amount. The item of $11.94 for stone sold in December, 1917, for the Ferdinand roads was paid January 23, 1918, and balanced the open account. This was the last stone sold or delivered for the Ferdinand roads.

On April 16, 1918, Traylor & Krempp Co. paid appellant $1,500 by check, which Traylor says was given in payment of notes but he did not know where it was credited. Davidson testified that no direction was given as to how this check should be applied; that he applied

it on the oldest unpaid invoices which were covered by the notes and that credit was given on the general ledger and not on the notes themselves. He mentioned the amounts credited to the Boonville, Jasper, Ferdinand, and other accounts of Traylor & Krempp, the amount applied on the Ferdinand account being $29.30. The credits so applied by appellant on the account for stone sold and delivered for the Ferdinand roads total $1,837.15, which leaves a balance of $2,744.04 due and unpaid for material used on the Ferdinand roads.

Appellees have made no attempt to point out any payment made on the Ferdinand road account for which they were not given proper credit. The only place in their brief where any reference to the subject of payment is made is in that part of the brief devoted to argument, and even here they have wholly failed to set out or discuss the evidence upon this question. They content themselves with the bare statement, that they "insist that the evidence at the last trial of this case was sufficient to sustain the trial court's finding that the entire account sued upon was paid," and that they "have proved that the indebtedness for which the notes were given included indebtedness for material furnished for resale and for use in work and upon contracts on which there was no bond or security of any kind." While the evidence does disclose that some of the material was sold for resale, there is no evidence to sustain the statement that the indebtedness for which the notes were given included indebtedness for which no bond had been given.

We quote from that part of appellee's brief which is devoted to argument, as follows: "Appellees admit that where no specific application of payments was made by the debtor the appellant had the right to choose the method of application of such payments. The burden was upon appellees to prove payment. The appellees

have discharged this burden and have proved the payment in cash of large amounts of money. The amount of these payments is several times the full amount of the account sued upon, and appellees contend that the burden was upon appellant to show that credit was given for these payments, either upon this account or some other account and all that it fails to show as credited upon some other account should have been credited on this account." In this connection attention is called to the fact that appellant offered to introduce a statement of the account showing all sales and payments on the account from June, 1916, to the time the account was closed in 1918. This evidence was excluded. This offered evidence covers nine pages of the record and if admitted would have shown the date and amount of each sale as well as of each payment. Appellant's witness, Davidson, testified that when no specific directions were given, the several payments were applied in each instance upon the oldest unpaid items in the account. If this testimony was not correct it could doubtless have been so shown on cross-examination, a privilege of which appellees did not avail themselves.

The uncontradicted evidence shows that appellees have been given credit for all payments made on the account involved in the instant case, and that they have wholly failed to sustain their answer of payment. The effect of taking the notes of the corporation was decided on the former appeal and needs no further discussion.

The next question to be considered is appellees' contention that the evidence is sufficient to prove novation. In support of this contention, appellees say appellant assented to the transfer of its debt to the new corporation, Traylor & Krempp Company, and having continued to deal with the latter is bound thereby, that an agreement by a creditor to release one partner from the firm's indebtedness assumed by the continuing partner

need not be an express agreement, but may be implied from the facts and circumstances, and that the agreement of appellant to release the partner may be implied. Appellees cite and rely on *Jones* v. *Austin* (1901), 26 Ind. App. 399, 59 N. E. 1082. In that case Austin and Brenner, as partners, had been conducting a mercantile business. Each was personally liable for the firm debts. Austin sold her interest in the business to Brenner who assumed and agreed to pay the firm debts. The evidence in that case was not made a part of the record, and what was said by the court related to an instruction which the court gave, to the effect that the agreement of a creditor to release a retiring partner from the firm indebtedness assumed by the continuing partner need not be an express agreement, but might be implied from the facts in the case.

When one partner sells his interest to another partner, the presumption is that the value of the retiring member was adjusted in ascertaining the value of his interest. As between the retiring partner and the continuing partner, the presumption is that the former is released from any liability for the existing debts of the partnership and that the continuing partner is liable for the whole of such debts. See *Thompson* v. *Lowe* (1887), 111 Ind. 272, 12 N. E. 476; *Mueller* v. *Sutter* (1875), 96 Iowa 80, 64 N. W. 665. While the agreement of the continuing partner to pay the partnership debts does not affect the rights of a partnership creditor to proceed against the retiring partner, such creditor may, by his agreement, accept the continuing partner in lieu of the old firm, and, as held in *Jones* v. *Austin, supra,* such agreement may be implied from the conduct of the creditor.

When a third person purchases the interest of another in a partnership business, such incoming part-

ner may become liable for the debts contracted by the firm previous to his retiring. He may so become liable by agreement but the presumption of law is against such liability and requires proof to remove it. So where a new promise has been made by the entire new firm, in respect to the payment of the old debt, with the consent of the old partners as well as of the creditor, it will amount to a novation of the debt and the new firm will be liable. *Kountz* v. *Holthouse* (1877), 85 Pa. 235. And dealings with the new firm inconsistent with any theory other than that the old debt has been discharged and a new debtor substituted is sufficient to establish novation, while dealings consistent with the continuance of the debt against the old firm is not sufficient to establish novation.

The Supreme Court of Illinois, in discussing novation as it related to a retiring partner, said: "The mere fact, that a creditor takes additional security from a new firm, without releasing the old debt, or receives interest from the new firm, will not absolve a retiring partner from his original responsibility. . . . The retiring partner is not discharged where the new firm pays interest on the debt to the creditor, either at the new or the old rate. . . . If a creditor of a firm knows of the death of one of the firm, and continues to deal as before with the survivors, he does not lose the remedy which he had against the estate of the deceased partner, unless there is evidence showing an intention to abandon the right of having recourse thereto for payment." *Hayward* v. *Burke* (1894), 151 Ill. 121, 131, 37 N. E. 846. And on page 132, after discussing the burden of proof, quoting from Ewell's Lindley on Partnership, the court said: "To convert a partnership into partner's separate debt, the intention so to do must clearly appear. There must be a deliberate and mutual

assent of creditor and debtor. The creditor may take the partner's separate liability, without necessarily extinguishing that of the firm."

In *Philadelphia, etc., Iron Co.* v. *Willinger* (1920), 137 Md. 45, 111 Atl. 132, 12 A. L. R. 1512, the court said: "The decisions in this state and in other jurisdictions are uniform in holding that the acceptance of a new note or security of equal degree for an existing note, is not in itself a payment or extinguishment of the original debt for which it was taken, in the absence of an agreement to that effect." And quoting from Ruling Case Law it was said: "In order to effect a novation, there must be a clear, definite intention on the part of all concerned that such is the purpose of the agreement, for it is a well-settled principle that novation is never to be presumed."

In 46 Corpus Juris, p. 626, the author says: "Subject to the rules pertaining to presumptions in the law of payment generally, the mere taking by a creditor of a new evidence of the indebtedness from his debtor or a third person does not, ordinarily, operate as a novation and consequent discharge of the original obligation unless so intended by the parties. Accordingly, in the absence of satisfactory proof to the contrary, the presumption is that an original obligation has not been extinguished by the taking of the new evidence of indebtedness, and where the new obligation is that of a third person, it will be presumed that the creditor retained the old debtor at the time he accepted the new one."

"When there is no express contract of novation, the declarations and acts of the creditor must be *inconsistent* (our italics) with an intention to hold the original debtor. The evidence must clearly show or be tantamount to an agreement to release the original debtor of liability. . . . The mere taking of the notes was not sufficient for payment, extinguishment, or novation as to the

original debt; without more, the presumption of the law is that the same were taken conditionally, on payment only." *Tuscaloosa Lumber Co.* v. *Tropical, etc., Oil Co.* (1924), 211 Ala. 258, 100 Southern 236.

In the instant case all the stone was shipped to the partnership and charged to it. Appellant shipped no material to the corporation and made no charges against it. The fact that appellant accepted the notes of the corporation and that it was paid in part by checks of the corporation is not sufficient to establish novation.

As was said on the former appeal in this case, "Whenever it appears that the creditor had other and better security than such notes for the payment of his debt, it will not be presumed that he intended to abandon such security. . . . In such cases the legal presumption of payment is controlled and rebutted as a matter of law. The presumption is explained, repelled, counteracted, and overcome and is no longer of any controlling influence. The general doctrine is, that the taking of a note is to be regarded as payment only when the security of the creditor is not thereby impaired." And it was there held that the taking of the notes in question would not be a discharge of the debt, unless such was the express agreement.

Neither the evidence on the former trial, nor on the second trial is sufficient to show that the notes of the corporation were to be accepted as payment, or as a discharge of the obligation of the partnership. To hold otherwise would be to deprive appellant of the security afforded by the bond of the contractor. In view of the presumption that the notes were not taken as payment or in satisfaction of the debt, it is clear that the evidence is not sufficient to establish novation.

One of the essentials of novation is a new and sufficient consideration moving to the promissor. The

acceptance of the checks in part payment of the debts of the partnership and the taking of the notes is not under the facts and circumstances sufficient to sustain a finding that the partnership debts were extinguished and that a contract was entered into between the corporation and appellant under which the latter could collect its debts from the former. See *Cox v. Baltimore, etc., R. Co.* (1913), 180 Ind. 495, 103 N. E. 337.

Other questions have been discussed by appellant as grounds for reversal, but in view of the conclusions reached, such questions become unimportant, and need be given no consideration.

Judgment reversed.

Nichols, J., concurs in results.