## JONES ET AL. *v.* AUSTIN.

[No. 3,419.    Filed March 26, 1901.]

CONTRACTS.—*Consideration.*—*Partnership.*—The sale and transfer of all interest in the partnership property by one partner to another constitutes a sufficient consideration for an agreement on the part of a creditor of the firm to release the retiring partner and accept the continuing partner as the sole debtor.  *pp. 400, 401.*

TRIAL.—*Instructions.*—*When Evidence Not in Record.*—Where the evidence is not in the record, instructions will not be held erroneous if proper under any evidence admissible under the issues. *p. 402.*

PARTNERSHIP.—*Dissolution.*—*Release of Retiring Partner from Partnership Debts.*—The agreement of a creditor to release a retiring partner from the firm indebtedness assumed by the continuing partner need not be an express agreement, but may be implied from the facts and circumstances surrounding the particular case. *pp. 403-405.*

TRIAL.—*Mistake.*—*Sending Instructions to Jury Room.*—*Harmless Error.*—A cause will not be reversed because of the action of the court in inadvertently placing in the hands of the jury the instructions given at the request of defendant instead of the interrogatories, where at the earliest opportunity the instructions were withdrawn and the jury informed of the mistake and properly instructed relative thereto. *pp. 405-408.*

From the De Kalb Circuit Court.  *Affirmed.*

*P. V. Hoffman* and *D. M. Link,* for appellants.

*J. E. Rose, J. H. Rose* and *T. S. Wickwire,* for appellee.

Jones *v.* Austin.

BLACK, J.—This was an action upon an account for goods sold and delivered in July and August, 1897, by the appellants to the appellee, Lettie Austin, and Callie R. Brenner, doing business under the firm name of Austin & Brenner. The appellee answered by general denial, and by a special paragraph alleging payment. There was also in the answer of the appellee a third paragraph, a demurrer to which was overruled. In this paragraph the appellee admitted that she and her codefendant were partners doing business under said firm name; and it was alleged that the assets of the firm consisted of a stock of dry goods and general merchandise of the value of $7,500 and a large number of accounts and bills receivable due to the firm of the value of $2,500; that on the 5th of October, 1897, the firm, by mutual agreement of the parties, dissolved; that the appellee sold to said Callie R. Brenner the undivided one-half of all the assets and property of the firm, and in consideration thereof said Brenner agreed to pay the indebtedness of the firm to the appellants, and the appellants, as a further consideration for said sale, agreed to accept said Brenner as their sole debtor upon the indebtedness sued on herein, and to discharge the appellee from all liability thereon; that thereafter, and prior to the institution of this suit, the appellants, in accordance with their said agreement so to do, accepted said Brenner as their sole debtor upon the claim sued on herein, and released and discharged the appellee from all liability thereon.

It is objected on behalf of the appellants that this paragraph of answer does not show a consideration for the agreement to release the appellee. It is quite elementary that a consideration for a promise may be something merely detrimental to the promisee; it need not be a giving of something by the promisee to the promisor, but may be a giving of something by the promisee to a third person, or some injury, loss, or inconvenience to the promisee. Here it is shown that a part of the inducement for the sale made by the appellee

Jones *v.* Austin.

to her partner was the promise and agreement of the appellants to accept the partner as the sole debtor, and to release the appellee. The sale and transfer constituted a sufficient consideration for such promise and agreement of the appellants. *Starr* v. *Earle,* 43 Ind. 478; *Hunt* v. *Dederick,* 105 Ind. 555; *Selz, etc., Co.* v. *Mayer,* 151 Ind. 422. Possibly the pleading might have been made more definite on motion.

There was a general verdict in favor of the appellants against the defendant Brenner, and in favor of the appellee; and the jury returned answers to interrogatories. The appellants moved for judgment in their favor against both defendants upon the answers to interrogatories, notwithstanding the general verdict; the court sustained the motion as to the defendant Brenner, and overruled it as to the appellee.

There is obscurity in the special findings and seeming want of agreement of some of them with others. Such defects are to be given influence, not against the general verdict, but in its favor. The general verdict for the appellee must be treated as comprehending within itself the finding of the jury in her favor of facts necessary to the establishment of any one of her well pleaded defenses. Even if the special findings should be regarded as inconsistent with one of a number of defenses pleaded, this would not of itself render the special findings irreconcilable with the general verdict, which might still be based upon evidence sufficient to support another defense pleaded. If it be true that the special findings and the general verdict itself are inconsistent with the defense of payment and with the appellee's answer of general denial, it does not therefore follow that the defense pleaded in the third paragraph of the appellee's answer was not established. The general verdict, of course, needs no support from the special findings, and if it does not clearly appear from the answers to interrogatories that the agreement of the appellants to release the appellee was

made at or prior to the appellee's sale and transfer to her partner, this can not militate against the general verdict, and the silence or indefiniteness of the special findings as to the time when the agreement to release the appellee was made can not avail the appellants, who for the overthrow of the general verdict must be able to point to some special finding which can not be construed as in harmony with the general verdict. Such inconsistency has not been pointed out. One of the special findings is to the effect that the indebtedness of the firm of Austin & Brenner to the appellants was fully paid prior to a date anterior to the commencement of the action. If this be inconsistent with other special findings and with the verdict against the defendant Brenner, who is not complaining here, it would not have been consistent with the special findings to render judgment against the appellee.

The motion of the appellants for a new trial was overruled. The court upon its own motion gave the jury instructions, and also gave instructions requested by the appellants and instructions asked by the appellee. It is contended that the court erred in giving each of the instructions given upon the appellee's request.

The evidence is not in the record, and instructions given may not be held erroneous if proper under any evidence admissible under the issues. The appellants in the presentation of objections to these instructions in argument have scarcely complied with the rules of this court relating to briefs. Yet we have examined the instructions with care. Some of them related to the right of one member of a firm to pay his individual debt with partnership funds, without the consent of his partners, and to the effect of payments by one member of a firm with partnership funds to his individual creditor who was also a partnership creditor. These instructions are objected to upon the ground that they were not relevant to the issues. They were relevant to the issue of payment of the partnership debt, to which issue it would

be necessary to refer some of the instructions concerning the same subjects given at the request of the appellants.

The instructions now under observation are referred to in a group, and not separately by the appellants in their brief, where there is no statement, succinct or otherwise, of the substance of these instructions, or any of them.

That the question as to the proper application of payments, out of the partnership assets, made by the continuing partner who has assumed the payment of the partnership debts, to a partnership creditor, who is also a creditor of the continuing partner individually, was a question relevant to the issue upon the answer of payment is sufficiently manifest; and more than this we are not called upon by the presentation made in the brief of the appellants to decide.

Another group of four of the instructions given at the request of the appellee related to the issue under the third paragraph of answer. It is said of these in the brief for the appellants: "These instructions are all erroneous, especially the eleventh. It tells the jury that they may infer a novation or release from circumstances, without proof of any express agreement." The instructions in question are not set out in the brief nor is the substance of any of them further stated.

The eleventh instruction is as follows: "An express agreement on the part of the plaintiffs to discharge the defendant Austin from the debt sued on, and hold the defendant Renner as the sole debtor thereon, is not necessary in order to justify you in finding that such agreement existed. If from all the circumstances in the case and from all the evidence adduced upon the trial hereof such agreement reasonably appears, you have a right to draw the inference that such agreement actually existed, and find accordingly."

An agreement between partners, at dissolution of the partnership, that the continuing partner shall assume and pay the partnership debts may be made by parol, but such an agreement will not be binding upon a firm creditor un-

less he becomes a party thereto. Where there is such an assumption assented to by the firm creditor who agrees to look to the partner assuming the payment of the partnership debts alone, upon a sufficient consideration, the retiring partner will be discharged.

The agreement of the firm creditor to look to the assuming partner alone must be actual, and will not ordinarily be implied from mere silence. Mechem Part., §276.

In George on Part., §118, it is said : "The inference that a retired partner has been discharged is greatly facilitated by the circumstance that a new partner has joined the firm and become liable to the creditor in respect of the debt in question. But this is not necessarily conclusive, for there may be circumstances showing that such was not the intention of the parties. At the same time, in the absence of any such evidence, the acceptance by the creditor of the liability of a new partner will practically conclude him from afterwards having recourse to the retired partner."

The fact that a creditor has taken from a continuing partner a new security for a debt due from him and a retired partner, jointly, is said to be strong evidence of an intention to look only to the continuing partner for payment. George on Part., §118.

A creditor who assents to a transfer of his debt from an old firm to a new firm, and goes on dealing with the latter for many years, making no demand for payment against the old firm, may not unfairly be inferred to have discharged the old firm. George on Part., §118.

A creditor may so conduct himself as to be estopped from saying that a retired partner is still liable to him, as where he has been guilty of some fraud or has done some act or made some statement in order to induce the partners or one of them to settle their accounts on the faith that one of them is no longer liable. George on Part., §118.

The agreement of the creditor to release the retiring partner from the firm indebtedness assumed by the continuing

partner need not be an express agreement, but may be implied from the facts and circumstances in a particular case. *Bank* v. *Green,* 40 Ohio St. 431.

In *Barnes* v. *Boyers,* 34 W. Va. 303, 307, 12 S. E. 708, the following language is quoted from Collyer's Part.: "In order that one liability may be replaced by another, by agreement, it is essential that the person in whom the correlative right resides should be a party to the agreement, or should, at all events, show by some act of his own that he accedes to the substitution."

We think the objection urged against the eleventh instruction insufficient.

A bill of exceptions shows that at the conclusion of the instructions, the court placed in the hands of the bailiff, to be delivered to the jury, the pleadings, the forms of a general verdict, and the interrogatories propounded to the jury by the appellants; and, inadvertently, by mistake, and without the knowledge of the attorneys on either side, the court also placed in the hands of the bailiff and sent to the jury the written instructions given at the request of the appellee, instead of the interrogatories propounded by her. The jury retired at about 6 o'clock p. m. When the court met the next morning at about 9 o'clock the jury yet remained in the jury room, still deliberating upon the verdict. The judge then found the interrogatories propounded by the appellee on his desk, and informed the attorneys for the parties that he feared he had made a mistake and had inadvertently sent to the jury the appellee's instructions, instead of her interrogatories. Thereupon the appellants moved to set aside the submission of the cause, to discharge the jury from its further consideration, and to grant a *venire de novo.* The court did not then rule upon this motion, but called the jury into the court room, and having by inquiry of the foreman ascertained that such mistake had occurred, the court withdrew said instructions from the jury. The appellants then renewed their motion above mentioned,

which the court overruled. The attorneys for the appellants then requested the court to read all the instructions to the jury again, which motion was overruled. The court then instructed the jury in writing, explaining the mistake, in substance as above set forth, and stating that the jury would take the interrogatories prepared by the appellee, but would not be permitted to take said instructions. And the court further at this time instructed the jury to answer these interrogatories in connection with the other interrogatories submitted to them; and, further, that all instructions given to the jury should have equal weight, including those not taken to the jury room as well as those so taken. The appellants excepted to this instruction and also requested the court to re-read to the jury with it all the instructions, which the court refused to do. Thereupon the court again sent out the jury with the pleadings, the forms of general verdict, and the interrogatories propounded by both parties. After deliberating about three hours, the jury returned their general verdict and their answers to interrogatories. The written instructions proposed by the appellee were in the possession of the jury more than twelve hours, before the court discovered the mistake, and none of the attorneys had any knowledge of the mistake until the court so called attention thereto.

The question is presented whether or not there was error in all these facts, so shown by bill of exceptions, for which a new trial should be ordered.

There was no knowledge on the part of the court or counsel that these instructions had been so sent to the jury, and therefore no intention to have them taken to the jury room. There was no misconduct through any purposed action of court, or counsel, or jury. It does not appear that the jurors, or any juror, read these instructions, or any of them, or heard them or any of them read, except by the court, or that it was known by any of the jurors that they had the instructions in their possession until the court so made inquiry

of the foreman.   The jury deliberated upon their verdict a number of hours after the return to the jury room.

It is to be taken into consideration that the appellants could not command information from the jurors to impeach their verdict, and that there was opportunity for them to read the instructions in the jury room.   Yet the absence of purposed misconduct reduces the matter to an accidental irregularity, and a new trial can not be ordered unless we are bound to conclude that an undue influence probably was exerted upon the jury.

The taking of instructions into the jury room is spoken of in *Hall* v. *State,* 8 Ind. 439, as a practice perhaps not very judicious.   That a contrary opinion has supporters, see *Chattahoochee Brick Co.* v. *Sullivan,* 86 Ga. 50, 67, 12 S. E. 216, 17 Am. & Eng. Ency. of Law (2nd ed.) 1244. It certainly could not be regarded as judicious knowingly to send out with the jury written instructions prepared by one party while withholding from them written instructions given at the request of the other party and those given upon the court's motion.

It is provided by our code, §550 Burns 1894, §541 Horner 1897 :  "After the jury have retired for deliberation, if there is a disagreement between them as to any part of the testimony, or if they desire to be informed as to any point of law arising in the case, they may request the officer to conduct them into court, where the information required shall be given in the presence of, or after notice to, the parties or their attorneys."

In *Eden* v. *Lingenfelter,* 39 Ind. 19, 22, it is said :  "The practice almost uniformly prevailing over the State, and the better practice, too, we think, is not to send the evidence out with the jury, except as they carry it in their memory.   This may be inferred, probably, from the section of the code of practice" above quoted.   See, also, *Nichols* v. *State, ex rel.,* 65 Ind. 512, 520.

So it is the usual practice (and it seems to be contem-

plated in the above quoted statute) not to send the written instructions to the jury room, leaving it to the jurors to carry the instructions pronounced only in open court, as well as the evidence, in their memories. *Jones* v. *Johnson,* 61 Ind. 257; *Low* v. *Freeman,* 117 Ind. 341; *Farley* v. *State,* 57 Ind. 331.

Where there has been no misconduct, properly so called, but an irregularity has occurred through inadvertence, as in the instance now being noticed, and the court at the earliest opportunity has indicated the irregularity as such to the jury and has withdrawn the written instructions from the jury and has told them by its instruction, in effect, to resort to their memories for all the instructions given to them, and thereafter the jurors have taken time to deliberate upon their verdict, and nothing affirmatively appears more than is shown in this bill of exceptions, we think we would not be justified in setting aside the result of the trial upon the ground merely that the jury, through no positive fault of any one, had an opportunity to read the instructions. *Bersch* v. *State,* 13 Ind. 434, 74 Am. Dec. 263; *Matlock* v. *Todd,* 19 Ind. 130, 132; *Carter* v. *Ford, etc., Co.,* 85 Ind. 180, 190; *Mergentheim* v. *State,* 107 Ind. 567, 573.

Judgment affirmed.