JOSEPH, PIERCE *v.* STATE OF INDIANA.

[No. 29,231. Filed March 18, 1957. Rehearing
denied April 30, 1957.]

530

*Waldo C. Ging, Stephen A. Free,* of Greenfield, and *William S. Isham* (of counsel), of Fowler, for appellants.

*Edwin K. Steers*, Attorney General, *Owen S. Boling, George B. Jeffrey*, and *Robert S. Baker*, Deputy Attorneys General, for appellee.

BOBBITT, J.—Appellants were indicted for murder in the first degree in the year 1935, tried by jury on change of venue to Hancock County in February, 1936, found guilty as charged and sentenced to the Indiana State Prison for life. On June 29, 1953, the Hancock Circuit Court sustained appellants' belated motion for a new trial. Thereafter, in November of 1953, they were retried on the original indictment and the jury failed to agree. In January, 1954, appellants were tried for the third time, and on this trial the jury found them guilty of murder in the second degree. This appeal arises out of the third trial.

Errors are assigned as follows:

"1. That the Court erred in denying defendants' separate and several motion for the personal presence and appearance in the Hancock County Circuit Court of defendants during the hearing and argument of the motion for new trial herein and in refusing to issue the necessary order therefor timely requested by defendants, in contravention of Article I, Section 13, Indiana Constitution, and the Fourteenth Amendment of the United States Constitution.

"2. That the Court erred in overruling the motion for new trial."

*First:* We will first consider appellants' assertion that because they were prevented by the rules of the Indiana State Prison from filing a timely motion for a new trial and from prosecuting an appeal, at that time, from the original judgment, they were denied their constitutional right to due process and, therefore, must now be discharged.

We do not concur with appellants that unless they are permitted a review of the judgment which they

sought to have reviewed in 1936, when their papers were allegedly suppressed by the prison authorities, that they must now be discharged.

On February 14, 1953, appellants, upon petition previously filed, were granted the right to file a belated motion for a new trial; and on March 12, 1953, a motion for a new trial was filed. Such motion was sustained and a new trial granted on June 29, 1953.

A timely review and reversal of the original judgment of commitment would have resulted in a new trial for appellants, hence, the same legal result was reached by the granting of their petition for a new trial on June 29, 1953.

If, on the hearing on the belated motion for a new trial, the court had overruled such motion instead of granting it, appellants' appeal would then have been from the original judgment. Carrying this reasoning to its next logical step, if, on such an appeal, this court would have reversed the judgment and granted a new trial, appellants would then have been in the identical situation in which they found themselves when the Hancock Circuit Court granted them a new trial on their belated motion therefor.

The mere fact that they were not retried for seventeen years from the date of the original judgment does not entitle them to a discharge. When the judgment upon which appellants were originally sentenced was set aside by the granting of a new trial upon the belated motion therefor, they were subject to prosecution on the original indictment; *Slack v. Grigsby* (1951), 229 Ind. 335, 344, 97 N. E. 2d 145; in the same manner and for the same reasons that they could have been retried had they been granted a new trial upon timely motion therefor.

If the appellants were denied an appeal by acts of the authorities of the Indiana State Prison until the

statutory time for appeal had expired, that fact would not nullify the judgment lawfully rendered against them by the Hancock Circuit Court. *State ex rel. Cook* v. *Howard, Warden* (1946), 223 Ind. 694, 699, 64 N. E. 2d 25.

The effect of the granting of the motion for permission to file a belated motion for a new trial was to extend the time for appeal. The sustaining of the belated motion for a new trial acknowledged error in the original trial and furnished to appellants the same relief they might have secured by an appeal timely filed.

Since appellants have been accorded the same relief —a new trial—as they would have received by a timely appeal, they were, in effect, granted "the type of appeal generally afforded those convicted of crime" in Indiana. See: *Dowd* v. *United States ex rel. Cook* (1951), 340 U. S. 206, 95 L. Ed. 215, 219, 71 S. Ct. 262.

These appellants have been accorded a new trial of the issues and a timely appeal from the judgment of the trial court in that trial. The record here does not show that their substantial rights were prejudiced by any delay. *Pitts* v. *State* (1939), 216 Ind. 168, 23 N. E. 2d 673; *Blanton* v. *State* (1954), 223 Ind. 51, 54, 115 N. E. 2d 122, 116 N. E. 2d 631; *Henderson* v. *State* (1954), 233 Ind. 598, 602, 122 N. E. 2d 340.

It is worthy of note, however, that the record does not show that their reason for not filing a motion for a new trial was because they were in prison and "under legal disability, and without funds, they were unable to secure a lawyer to advise them the steps or procedure necessary to file a belated motion for a new trial after the expiration of statutory time until the recent decision of the Supreme Court of the State of Indiana in the case of *Walker* v. *State* [1948, 226 Ind. 552], 82 N. E. 2d 245, which decision pointed the necessary steps

available to present and file a belated motion for a new trial after the expiration of the statutory time in order to perfect the record, in order to appeal."

There is no time limitation on prosecution for murder in Indiana and if, under the factual situation shown by the record here, appellants were to be discharged the result would be to impose a limitation within which an accused could be prosecuted for murder.

Society is entitled to some consideration in dealing with crime. The loss of evidence and the death of witnesses may affect the State as well as the defendant. Due process does not require that the prisoner may sit idly by and await the death of State witnesses or the loss of material evidence, then petition the trial court for a belated motion for a new trial and, if unsuccessful at such trial, secure his discharge by contending in this court that his constitutional rights were violated because of such delay, or because he was not granted a timely appeal from a judgment which was subsequently set aside by the granting of a belated motion for a new trial.

Due process does not, on the record in this case, require that appellants be discharged.

*Second:* Did the trial court err in denying defendants-appellants' motion to be personally present in the court room during the hearing and argument on their motion for a new trial?

Appellants rely upon *State ex rel. Cutsinger* v. *Spencer, Judge* (1941), 219 Ind. 148, 41 N. E. 2d 601, and *State ex rel. White* v. *Hilgemann, Judge* (1941), 218 Ind. 572, 34 N. E. 2d 129, for support of their assertion that the motion for a new trial is a part of, or a continuation of, the original trial.

State ex rel. White was an action by a poor person to obtain counsel, at the expense of the county, to perfect and present an appeal of a judgment rendered

against him at the conclusion of his trial for murder in the first degree. This case lends no support to appellants' position here, but, on the contrary, the language of this court in *State ex rel. White* v. *Hilgemann, Judge, supra* (1941), 218 Ind. 572, 34 N. E. 2d 129, at page 577 of 218 Ind., as follows:

"The Batchelor case [*Batchelor* v. *State,* 189 Ind. 69, 125 N. E. 773] deals with the right to counsel before and during the trial, but the reasoning supports the view that the defendant is entitled to have counsel to advise him and represent him on appeal.",

clearly recognizes that the "trial" and the "appeal" are separate proceedings.

*State ex rel. Cutsinger* v. *Spencer, Judge, supra* (1941), 219 Ind. 148, 41 N. E. 2d 601, was also an action for mandate seeking to compel the trial court to furnish relator, at the expense of the county, a certified copy of the record in a criminal proceeding, for use in the preparation and filing of a petition for writ of error *coram nobis.*

The statement on pages 152 and 153 of 219 Ind., upon which appellants also rely, and which is as follows:

"After he has been convicted, and the judgment has become final, and it has been determined upon appeal that there was no prejudicial error in the trial, or when the time is past and the right to a review for error has been waived, the defendant is no longer 'the accused,' and the 'criminal prosecution(s)' is ended.";

is dicta which must be considered in connection with the facts and circumstances in that case. There, the relator had been convicted, was serving his sentence in the Indiana State Prison, and the time for taking an appeal had expired, thereby waiving the right to review for error. Certainly, under such circumstances

the defendant is no longer "the accused." However, this case cannot be considered as authority for the statement, that a defendant who takes the proper steps to appeal from a judgment of conviction remains the accused after the jury has found him guilty and the court has entered judgment upon the verdict. At this point the defendant stands convicted and ceases to be the "accused" within the meaning of Article I, Section 13 of the Constitution of the State of Indiana.

Insofar as *State ex rel. Cutsinger* v. *Spencer, Judge, supra* (1941), 219 Ind. 148, 41 N. E. 2d 601, purports to hold that a defendant continues to be the accused person referred to in Section 13 of Article I of the Constitution of the State of Indiana until his case has been affirmed on appeal, it is disapproved.

*Ex Parte Huffman* (1914), 181 Ind. 241, 104 N. E. 511, upon which appellants rely to support their alleged right to be present in person at the argument on their motion for a new trial, was an action to be admitted to bail during the pendency of petitioner's motion for a new trial. No question of the petitioner's right to be present at the presentation of his motion for a new trial was raised in this case, and the following language in the opinion, at page 244 of 181 Ind.,

"This motion may be filed and presented by the defendant in person. Section 13, of our Bill of Rights (Constitution, Art. 1, §13), guarantees the accused the right 'to be heard by himself,' and this right continues until the disposition of a motion for a new trial, where such a proceeding is provided for.",

is pure dicta unsupported by authority or reason. Insofar as this dicta purports to hold that Article I, Section 13 of the Constitution of the State of Indiana guarantees an accused the right to be present in per-

son at the time of the filing, or during the presentation of, or ruling upon, his motion for a new trial, it is disapproved.

The second clause of Article I, Section 13 of the Constitution of the State of Indiana, provides that in all criminal prosecutions the accused shall have the right "to be heard by himself and counsel."

Acts 1905, ch. 169, §222, p. 584, being §9-1801, Burns' 1956 Replacement, provides:

"No person prosecuted for any offense punishable by death, or by confinement in the state prison or county jail, shall be tried unless personally present during the trial."

This section merely declares the rule at common law. *Dean* v. *State of Indiana* (1955), 234 Ind. 568, 570, 130 N. E. 2d 126.

A motion for a new trial is not a part of the prosecution of a criminal case, rather, it is a proceeding by which the defendant seeks to vacate the previous trial and escape all of its results, *State* v. *Balsley* (1902), 159 Ind. 395, 397, 398, 65 N. E. 185; and to afford the trial court an opportunity to correct errors, if any, made in the trial.

Only a single trial was allowed at common law and a motion for a new trial was unknown. Ewbank's Indiana Criminal Law, Symmes ed., §490, p. 312; Pollock & Maitland, History of English Law, Vol. II, 2d. ed., p. 664; Orfield, Criminal Procedure from Arrest to Appeal, pp. 494-498.

Under a statute which provides that, "if the indictment be for a felony, the defendant must be present, and shall remain in actual custody *during the trial;*" Cr. Code Pract. §183, (our italics) the Kentucky Court of Appeals has, in numerous cases, held that the words "during the trial" embrace all stages of the trial, which, as declared, " 'begins with the swearing of the jury

and ends when the verdict is returned.' " *Puckett* v. *Commonwealth of Kentucky* (1923), 200 Ky. 509, 511, 512, 255 S. W. 125, 34 A. L. R. 96.

Kentucky also has a constitutional provision similar to Article I, Section 13 of the Constitution of the State of Indiana. The reasoning by which the Kentucky Court arrived at the above conclusion is sound, and we think applies with equal force to our statute.[1]

We recognize that a defendant must be present at trial, verdict, and sentence. Wharton's Criminal Procedure, 10th ed., Vol. II, §1485, p. 1948. However, the right to be present at the time sentence or judgment is pronounced is a common law right, separate and apart from the constitutional or statutory right to be present at the trial. *Ball* v. *United States* (1891), 140 U. S. 118, 35 L. Ed. 377, 11 S. Ct. 761; 15 Am. Jur., Criminal Law, §§454-456, pp. 113-114; Wharton's Criminal Procedure, 10th ed., Vol. II, §1486, p. 1949.

A trial consists of " 'The examination before a competent tribunal, according to the laws of the land, of the facts put in issue in a cause, for the purpose of determining such issue.' " *Bush* v. *State* (1920), 189 Ind. 467, 473, 128 N. E. 443.

Under this theory of a trial the accused has a right to be present when issues of fact are tried, but when matters of law are presented his presence is not required, unless the trial court deems it necessary. Bishop's New Crim. Proc., 2d ed., Vol. I, §269, p. 235; Wharton's Criminal Procedure, 10th ed., Vol. II, §1484, p. 1945.

The motion for a new trial herein is concerned with questions of law, hence, the defendants-appellants

---

1. Acts 1905, ch. 169, §222, p. 584, being §9-1801, Burns' 1956 Replacement.

had no right to be present at the argument and hearing upon such motion, if they were represented by counsel and their substantial rights protected. The record shows that they were represented by counsel and fails to disclose that any of their substantial rights were violated.

The ruling on a motion for a new trial in a criminal case is not part of the trial of the accused as contemplated by the statutory and constitutional provisions in this State. *Lillard* v. *State* (1898), 151 Ind. 322, 326-327, 50 N. E. 383; *Reed* v. *State* (1897), 147 Ind. 41, 46 N. E. 135; *Carmen et al.* v. *State* (1935), 208 Ind. 297, 309, 196 N. E. 78.

A motion for a new trial may be presented, argued and ruled upon in the absence of the accused, if he is represented by counsel and is awarded all the substantial rights which the law accords him. *Reed* v. *State, supra* (1897), 147 Ind. 41, 46 N. E. 135; *Lillard* v. *State, supra* (1898), 151 Ind. 322, 50 N. E. 383; *Selke* v. *State* (1937), 211 Ind. 232, 236, 6 N. E. 2d 570; *State* v. *Brown* (1876), 63 Mo. 439, 444; *Ward* v. *Territory of Oklahoma* (1899), 8 Okla. 12, 56 Pac. 704, 707; Wharton's Criminal Procedure, 10th ed., Vol. II, §1484, p. 1946.

Cf. *Dillon* v. *State* (1952), 231 Ind. 396, 108 N. E. 2d 881, where it was held that appellant's constitutional rights were not violated by the refusal of the trial court to order his return for hearing on his petition for writ of error *coram nobis.*

*Third:* Appellants assert that the verdict of the jury is contrary to law for the reason that because of the lapse of more than seventeen years time between the time of the returning of the indictment and the date of the present trial, certain evidence was missing and certain witnesses could not

be found who would have been available in 1936 had appellants received a new trial at that time.

An examination of the transcript at the pages cited by appellants in their brief, discloses that the missing evidence of which they complain consisted of guns which were exhibits at the original trial, and that the witnesses who were unavailable were among those who had been subpoenaed as witnesses for the State. Appellants have failed to state at any place in their brief what evidence was missing, what witnesses were unavailable, and what the testimony would have been had the witnesses been present to testify.

We cannot see how appellants could have been harmed by the absence of State's witnesses, or by the failure of the State to produce certain guns which were in evidence at the first trial.

Appellants have failed to show where their substantial rights were in any way prejudiced by the absence of witnesses or the unavailability of evidence. No cause for reversal is here shown. *Henderson* v. *State, supra* (1954), 233 Ind. 598, 602, 122 N. E. 2d 340.

*Fourth:* It is also asserted that there is no evidence to prove the *corpus delicti.*

Proof of the *corpus delicti* means proof that the specific crime charged has actually been committed by someone. *Taylor* v. *State* (1957), 236 Ind. 415, 140 N. E. 2d 104; *Hunt* v. *State* (1956), 235 Ind. 276, 133 N. E. 2d 48, 49, 50.

An examination of the evidence discloses that Detectives Chatham and Quinnette were assigned to make an investigation of an apartment in Indianapolis for stolen property and they were looking for a man by the name of Coleman for questioning concerning such property.

When Detective Chatham knocked at the door of the

apartment it was opened from within and he stepped into the room followed immediately by Detective Quinnette. Upon entering the room the detectives saw two men standing facing them who later they learned to be appellants herein, Donald Joseph and Paul Pierce.

Detective Chatham inquired which one of the two men was Mr. Coleman, whereupon both men replied, "I am." Chatham then said, "We are from the Detective Office and I'd like to talk to you a minute." At that time appellant Pierce said, "Stick them up, you son of a —" and the shooting started, the first shot being fired by appellant Pierce. At that time he was approximately two feet in front of Detective Quinnette who then returned the fire. During the shooting Detective Quinnette fell to the floor. After emptying his gun at Detective Quinnette, appellant Pierce ran into the bedroom where he secured another gun.

Appellant Pierce was taken to the City Hospital into the room of Detective Quinnette who raised up off of his bed and pointed his finger at Pierce and said, "You shot me without giving me a chance."

An officer of the Indianapolis Police Department and a witness for the State testified that while he and appellant Pierce were returning from the City Hospital in Indianapolis, "I asked Paul Pierce if Quinnette and Chatham identified themselves as detectives, what made him shoot so quick?" He replied, "I would have shot any damn cop that would have walked in that doorway."

In a statement by appellant Pierce, dated December 10, 1935, and introduced as State's Exhibit No. 6, appears the following:

"While myself and Orville Quinnette were shooting at each other I saw Orville Quinnette fall to the floor between the davenport and wall. And about this time I spun around. And fell to one knee. And Russell Chatham and Donald Joseph were on the davenport fighting. After I emptied my 38 caliber

Smith and Wesson revolver No. 45969 at Orville Quinnette I ran back into a small bed room. And grabbed a brief case. Took a 38 caliber Colts revolver out of this brief case. Then throwed the brief case out into the living room. And I fired another shot. And I think this shot hit Russell Chatham. I fired this shot while I was in the living room. And while Russell Chatham and Donald Joseph were out in the hall fighting. And Donald Joseph must of got away from Russell Chatham. And came back into the apartment and I told Donald Joseph to grab the brief case which I had thrown on the floor in the living room. And we both ran out the back way of this apt. house."

The Superintendent of the Indianapolis City Hospital who was a physician, testified that he operated on Orville Quinnette and removed a bullet and a piece of cloth from his abdominal cavity, and that Orville Quinnette died on December 18, 1935 as a result of peritonitis caused by a foreign body entering the abdomen of Quinnette such as the bullet and piece of cloth.

We believe this evidence sufficient to establish that someone shot Detective Quinnette and that he died as a result thereof. *Hunt* v. *State* (1939), 216 Ind. 171, 178, 23 N. E. 2d 681.

*Fifth:* Appellants further assert that their rights under the law of Indiana and under the Fourteenth Amendment of the Constitution of the United States were violated because the State police who had apprehended them released them to the Indianapolis Police Department instead of delivering them to the County Sheriff at the Marion County jail, and rely upon *Dearing* v. *State* (1951), 229 Ind. 131, 95 N. E. 2d 832, to support their position.

*Dearing* v. *State, supra,* was an appeal from a denial of a writ of error *coram nobis.* The only questions properly presented in that case were the validity of the

bench warrant upon which appellant Dearing was arrested, and his right to counsel at all steps of the proceedings against him. Further, appellants in the case at bar were arrested on December 10, 1935, but were not indicted until December 18, 1935, hence, the sheriff had no warrant for their arrest at the time they were released to the Indianapolis Police Department on December 10, 1935. This was not the situation in the Dearing case, and assuming that it did make law which required the State Police to release prisoners only to County Sheriffs, a matter which we do not decide, that case lends no support to appellants' position under the circumstances here.

Both appellants were, at the time of their apprehension by the State Police, fugitives from justice. They had, on or about October 5, 1935, escaped from the Indiana State Prison. Under the circumstances as shown by the record, their substantial rights could not have been prejudiced by their release to the Indianapolis Police Department.

Appellants have failed to point out in the argument section of their brief wherein their rights under the Fourteenth Amendment were violated by their release to the Indianapolis Police Department, hence this question is waived. *Jordan* v. *State* (1953), 232 Ind. 265, 267, 110 N. E. 2d 751.

*Sixth:* Appellants further assert that the trial court erred in admitting, over their objection, certain exhibits offered by the State and consisting of statements or confessions made by appellants to officers of the Indianapolis Police Department while in their custody. Such statements were prima facie in evidence and the burden of showing their incompetency rested upon appellants. *Eiffe* v. *State* (1948), 226 Ind. 57, 77 N. E. 2d 750; *Pearman* v. *State* (1954), 233 Ind. 111, 117 N. E. 2d 362, 364.

It is contended that such statements or confessions were made through fear, coercion and mistreatment. The record shows that on each occasion when appellants objected to the admission of any statement or confession, the trial court excused the jury and conducted a hearing on their admissibility. It further shows that the evidence adduced at these hearings was in sharp conflict. Appellants admit, in their brief, that there was "considerable conflict" in this evidence. There was sufficient evidence of probative value to sustain the ruling of the court in each instance. Under such circumstances this court will not weigh the evidence. *Pearman* v. *State, supra* (1954), 233 Ind. 111, 117 N. E. 2d 362, 365.

While we do not deem it necessary to further extend this opinion by a recital of the testimony of the police officers and reputable physicians who treated appellants' gun wounds, we have examined the record and find substantial evidence sufficiently abundant to sustain the finding of the trial court in each instance.

Appellants have failed to sustain their burden of proof and we must conclude that such statements and confessions were properly admitted in evidence. In our opinion there was sufficient evidence to sustain the verdict of the jury, and appellants have failed to show that it was contrary to law. Hence, the judgment of the trial court must be affirmed.

Judgment affirmed.

Achor, C. J., Arterburn, Emmert and Landis, JJ., concur.

NOTE.—Reported in 141 N. E. 2d 109.