## THOMAS SNELLING *v*. STATE OF INDIANA.

[No. 2-1173A253. Filed April 17, 1975.]

*Herbert W. Johnson, Jr., White, Johnson & LeMay,* of Indianapolis, for appellant.

*Theodore L. Sendak,* Attorney General, *Wesley T. Wilson,* Deputy Attorney General, for appellee.

WHITE, J.—A jury found appellant (Snelling) guilty of theft of property of the value of less than one hundred dollars and set his punishment as a fine of five hundred dollars ($500.00). The court imposed the fine and costs in the amount of thirty-eight dollars ($38.00). In this appeal he alleges three errors on the part of the trial court: First, that the court erred in overruling his motion to quash the indictment; Second, that the court erred in permitting a witness to testify as to his opinion of the value of certain work performed by appellant; and Third, that the court erred in refusing his tendered instruction in respect to the word "deception."

We affirm.

The evidence most favorable to the appellee State of Indiana is that Snelling, on March 25th, 1972, made an uninvited

visit to the residence of one Robert McHolme, a property owner who at the time was 82 years of age, to solicit work of any kind. During the conversation Snelling suggested that he be hired to clean out the gutters and he and McHolme agreed on that job to be performed for eight dollars ($8.00). Snelling went up on the roof to look around, then came back down and told McHolme that the west dormer roof had a sag in it and that the timbers under the roof had rotted and should be replaced. McHolme did not check on the condition of the roof but instead entered into a contract with Snelling for repair of the same for the price of $135.00, including both labor and materials, and gave Snelling a $30 advance toward the cost of the materials. (The hand-written contract was admitted into evidence but, presumably due to Snelling's alleged near illiteracy, is undecipherable.) McHolme testified that the contract was for cleaning the gutters and repairing the dormer roof, including the replacement of the rotted timbers with 6 ten foot long two-by-fours. Snelling then left.

About 10:00 A.M. on March 28, McHolme was at work in his backyard when Snelling and another person identified as Snelling's brother-in-law came around to the back of the house. During the ensuing conversation Snelling said he had found some rusted downspouts that should be replaced, and McHolme authorized him to do so. Snelling and the other person went up on the roof to work. At 1:00 o'clock they again approached McHolme, stated that they were done, and presented him with a bill for $276.00, which was to include both the cleaning of gutters and the repair of the dormer roof under the original contract and the additional work on the gutters and drains. McHolme questioned the total bill so Snelling orally listed the work that he claimed to have done on the gutters and drains and had his brother-in-law write them down. McHolme thought the price was still too much and after negotiation, but without inspection of the alleged work, he and Snelling agreed on a final price of $203.00, which McHolme paid.

Six weeks later two Indianapolis building inspectors examined the alleged repairs. They found that the dormer roof had not been repaired nor was it in need of repair, and that while some work had been done on the gutters and downspouts the reasonable value of that work, including labor and materials, was approximately seventy dollars ($70.00). The evidence further shows that Snelling did not bring the six two-by-fours to McHolme's house on the 28th even though he had received a $30 advance payment for their purchase.

## I.

Snelling's first argument is that the Court erred in over-ruling his Motion to Quash the indictment. That indictment, in pertinent part, alleges that Snelling

". . . committed the crime of theft in that he knowingly, unlawfully and feloniously obtained by deception control over property of ROBERT McHOLME, To-wit: Money then and there of the value of One Hundred Thirty-five and 00/100 Dollars ($135.00), with the intention to deprive the said ROBERT McHOLME of the use and benefit of said property, to-wit: by knowingly creating and confirming to the said ROBERT McHOLME the false impression that he, the said THOMAS SNELLING, had cleaned out the Gutters on the residence of the said ROBERT McHOLME, replaced Timbers in the roof, and installed flashing on the garage roof whereas in truth and in fact, the said THOMAS SNELLING did not clean the gutters, install the timbers in the roof or install the metal flashing on the garage roof, all of which the said THOMAS SNELLING then and there well knew. . . ."

Snelling's Motion to Quash, and Supporting Memorandum, omitting formal parts, reads:

"The defendant, by counsel, moves the Court to quash the indictment in the above entitled cause for the reasons that:

"1. The facts stated in the indictment do not constitute a probable offense.

"2. Said indictment does not state an offense with sufficient certainty.

"3. . . . [A third and lengthier reason not pertinent to this appeal.] . . . .

"MEMORANDUM IN SUPPORT OF MOTION
TO QUASH

"In support of the defendant's Motion to Quash in the subject indictment, the defendant respectfully shows the Court that an employment contract has been alleged and that satisfactory performance or failure to perform an employment contract does not constitute a crime particularly where services of the employee are terminated by the employer as in the facts alleged . . . . [citing cases] . . . ."

In this appeal Snelling argues that the indictment is deficient in that it "fails to state or allege any facts showing that the said Robert McHolme relied upon any false representation alleged to have been made to him."

As the State correctly noted in its brief, Snelling's argument on appeal is different from the argument raised in the memorandum to his motion to quash. In fact, the argument on appeal is founded on the second rhetorical paragraph of that motion while the memorandum is addressed solely to the first rhetorical paragraph.

Criminal Rule No. 3 of the Indiana Rules of Procedure provides in pertinent part:

"(A) Motion to Quash—Memorandum. In all cases where a motion is made to quash an indictment or affidavit, a memorandum shall be filed therewith stating specifically wherein such indictment or affidavit does not state the offense with sufficient certainty, or wherein the facts stated in the indictment or affidavit do not constitute a public offense. . . .

"The party so filing such motion shall be deemed to have waived his right thereafter to question the indictment or affidavit on any ground not so specified in the memorandum."

Snelling's failure to specifically question the indictment on the ground he now asserts constituted a waiver of that ground.

Inasmuch as no argument is made on any issue presented in Snelling's memorandum the sufficiency of the indictment is not before us.

## II.

Snelling's second argument is that the court refused to give his tendered final jury instruction reading as follows:

"You are instructed that Deception is a necessary element of the charge against this Defendant; therefore, if you find that the State's witness, Robert McHolme knew, or in the exercise of reasonable care should have known, before settlement of his bill with the Defendant that undone work was in dispute as to having been required to have been done by the Defendant, he was not deceived and you should find the Defendant 'not guilty'."

Snelling's basic argument is that the final instructions given the jurors by the trial court did not instruct them on the definition and essential elements of "deception", and thus failure to give his tendered instruction, which would allegedly correct that omission, was error.

We agree that the Court's final instructions did not instruct the jurors on "deception". That omission, however, did not bestow upon Snelling the right to have an erroneous instruction given.

Snelling's tendered instruction was properly refused for a number of reasons including a misstatement of the law. The word "deception" as used in the Offenses Against Property Act is defined carefully and at length.[1] None of the language contained in that definition implies that there is no deception if the person deceived "in the exercise of reasonable care should have known" that the representations made to him were untrue, and Snelling has cited no authority supporting such an interpretation. On the contrary the statutory definition places upon the person who has created a false impression (e.g., that roof timbers needed replacement and that he replaced them) the burden of dispelling it.[2]

The record shows that Snelling's proposed instruction was submitted to and refused by the trial court prior to the time

---

1. IC 1971, 35-17-5-13, cl. (3); Ind. Ann. Stat. § 10-3040, cl. (3) (Burns 1974 Supp.).

2. IC 1971, 35-17-5-13(3) reads in part: " 'Deception' means knowingly to: . . . (b) fail to correct a false impression which the actor previously has created or confirmed; . . . "

the court laid its proposed final instructions before the parties and thus was not intended, nor could it have been intended, to cure a defect in the court's instructions. The record further shows that Snelling, after being given the opportunity to examine and object to said proposed instructions, made no objections thereto. Having failed to object to, and thus direct the court's attention to, the lack of an instruction on "deception", Snelling cannot now raise that issue. See *Summerlin* v. *State* (1971), 256 Ind. 652, at 662, 271 N.E.2d 411, at 416; CR. 8 (B).

## III.

Snelling's third alleged error is that the trial court erred when, over Snelling's objections, he permitted the state's witness Jesse Buck to testify that in his opinion the value of the work done by Snelling was $65 to $75 including labor and materials.

Snelling's argument is basically that Jesse Buck's opinion of the value of the work done is immaterial to the issues of the case. He cites in support of that argument, *LeFlore* v. *State* (1972), 258 Ind. 458, 281 N.E.2d 876, wherein it was held that an objection to a question intended to elicit the witness' opinion on the evidentiary value of fingerprints was properly sustained, and *Palmer* v. *State* (1972), 153 Ind. App. 648, 288 N.E.2d 739, wherein it was held proper to sustain an objection to a question intended to elicit the witness' opinion as to the proclivity toward crime of members of various racial groups.

Those cases are not applicable to the present case. Here the value of the work actually performed by Snelling is relevant to the basic issue of whether any part of the $203 paid him by McHolme was obtained by deception. If the reasonable value of that work were anywhere in the neighborhood of the $203 finally agreed upon, or in the absence of evidence to the contrary, the jury could have concluded that McHolme was not deceived.

The judgment is affirmed.

Sullivan, P.J., and Buchanan, J., concur.