THOMAS SNELLING v. STATE OF INDIANA.

[No. 2-574A115. Filed December 2, 1975.]

*Richard L. Milan,* of Indianapolis, for appellant.

*Theodore L. Sendak,* Attorney General, *Wesley T. Wilson,* Deputy Attorney General, for appellee.

SULLIVAN, P.J.—Appellant Thomas Snelling (Snelling) was charged by indictment with theft and that he obtained by deception control over property of Ina Fay Arnold (Mrs. Arnold).[1] He was convicted after trial by jury and was sentenced to imprisonment for from one to ten years and was fined $2500.00.

The facts most favorable to the State reveal that on July 6, 1972, Paul Arnold (Mrs. Arnold's husband, a semi-invalid) and Snelling executed a written contract whereby Snelling was to perform certain repair work on Arnold's house. From time to time, Snelling informed Mrs. Arnold that additional repairs were needed, and she orally agreed to the performance of the work. On one such occasion, Snelling informed Mrs. Arnold that the basement ceiling was sagging, and she authorized the installation of bracing at a cost of approximately $1000.00. In reality, no bracing was needed, and none was installed. Nevertheless, Mrs. Aronld paid Snelling, as a part of a series of payments totalling over $4800.00, approximately $1000.00 for the alleged bracing.

Snelling presents four issues for our consideration on appeal:

1. Whether the trial court erred in overruling his Motion to Quash the indictment;
2. Whether the trial court erred in denying his Motion in Limine and in permitting the State to cross-examine him regarding a prior felony conviction then pending upon appeal;

---

1. IC 1971, 35-17-5-3, Ind. Ann. Stat. § 10-3030 (Burns Supp. 1975).

3. Whether the trial court erred in refusing certain instructions;

4. Whether the trial court erred in sending copies of the final jury instructions to the jury room.

We affirm.

I: ERROR, IF ANY, NOT PRESERVED AS TO OVER-RULING OF SNELLING'S MOTION TO QUASH THE INDICTMENT

The indictment, omitting formal parts, reads as follows:

"Thomas Snelling . . . committed the crime of theft in that he knowingly, unlawfully, and feloniously obtained by deception, control over property of INA FAY ARNOLD, to-wit: Money, then and there of the value of One Thousand and 00/100 Dollars ($1,000.00), with the intention to deprive INA FAY ARNOLD of the use and benefit of said property by knowing creating and confirming to the said INA FAY ARNOLD the false impression that he, the said THOMAS SNELLING would install Bracing in the Basement of the residence of the said INA FAY ARNOLD, then and there located at 4428 North Guilford in the City of Indianapolis, County of Marion, State of Indiana, whereas in truth and in fact, the said THOMAS SNELLING did not install the Bracing and that said Bracing was in fact not necessary, all of which the said THOMAS SNELLING then and there well knew, . . ."

Snelling filed a motion to quash the indictment on the grounds that the facts stated did not state a public offense, and the indictment did not state an offense with sufficient certainty. The memorandum in support of the motion reads in its entirety as follows:

"In support of the defendant's Motion to Quash in the subject indictment, the defendant respectfully shows the Court that an employment contract has been alleged by the prosecuting witness and the defendant and that said performance or failure to perform an employment contract as alleged does not constitute a crime."

Other than the naked assertion itself, Snelling, in his brief, presents no argument and cites no authority for his contention in this regard. We do not therefore consider it. Ind. Rules of Procedure AP. 8.3 (A) (7).

Snelling attempts to argue, however, that his mere "promise to perform in the future" does not constitute a misrepresentation of an existing fact sufficient to entitle reliance by Mrs. Arnold and that therefore the indicment lacks allegation of the essential element of deceit. This indictment and Snelling's motion to quash and supporting memorandum are in all pertinent parts identical to those in an earlier conviction which Snelling appealed to this Court. *Snelling v. State* (1975), 163 Ind. App. 644, 326 N.E.2d 606. Our opinion in that case is applicable here:

"... Snelling's argument on appeal is different from the argument raised in the memorandum to his motion to quash. In fact, the argument on appeal is founded on the second rhetorical paragraph of that motion while the memorandum is addressed solely to the first rhetorical paragraph.

"Criminal Rule No. 3 of the Indiana Rules of Procedure provides in pertinent part:

'(A) Motion to Quash—Memorandum. In all cases where a motion is made to quash an indictment or affidavit, a memorandum shall be filed therewith stating specifically wherein such indictment or affidavit does not state the offense with sufficient certainty, or wherein the facts stated in the indictment or affidavit do not constitute a public offense . . .

'The party so filing such motion shall be deemed to have waived his right thereafter to question the indictment or affidavit on any ground not so specified in the memorandum.'

"Snelling's failure to specifically question the indictment on the ground he now asserts constituted a waiver of that ground.

"Inasmuch as no argument is made on any issue presented in Snelling's memorandum the sufficiency of the indictment is not before us." 326 N.E.2d at 608-9.

## II. THE TRIAL COURT CORRECTLY DENIED SNELLING'S MOTION IN LIMINE AND PROPERLY PERMITTED CROSS-EXAMINATION REGARDING A PRIOR FELONY CONVICTION

Prior to trial, Snelling filed a Motion in Limine which in part sought to bar the State from mentioning his prior

conviction for theft by deception which was then pending on appeal before this Court.[2] The motion was overruled and on cross-examination by the State, Snelling was asked the following question: "Isn't it true that on July 2, 1973, you were convicted by a jury of theft by deception?" Snelling's counsel objected to the question on the ground that ". . . it is a matter on appeal . . ." The trial court overruled the objection and the question was answered in the affirmative.

Snelling argues that for impeachment purposes, no conviction exists until a defendant's appellate remedies have been exhausted. The State, on the other hand, contends that unless and until the judgment of the trial court has been reversed, Snelling stands convicted and may properly be questioned regarding the conviction for the purpose of testing his credibility.

As a general rule, it is proper to attack the credibility of a witness-defendant by showing that he has suffered a previous criminal conviction for a crime involving dishonesty or false statement or for a crime which by a statute in effect prior to 1852 would have rendered a witness incompetent. *Ashton* v. *Anderson* (1972), 258 Ind. 51, 279 N.E.2d 210; *Glenn* v. *Clore* (1873), 42 Ind. 60; Ind. Ann. Stat. 35-1-31-6 (Burns Code Ed. 1975); Ind. Ann. Stat. 34-1-14-14 (Burns Code Ed. 1973). When the conviction sought to be used for impeachment purposes is in the process of being appealed, the propriety of so using the conviction has been questioned. The instant case presents this precise question to Indiana appellate courts for the first time.

The majority rule allows the credibility of a witness to be attacked by showing a previous criminal conviction even though an appeal therefrom is pending. *See* 16 A.L.R. 3d 726. The cases are bottomed on one or both of the following premises:

---

2. Snelling's earlier conviction was affirmed on April 17, 1975: *Snelling* v. *State* (1975), 163 Ind. App. 644, 326 N.E.2d 606.

1. A conviction extinguishes the presumption of innocence.
2. The judgment holds fast as a final determination until such time as it may be reversed.

Indiana cases have held with but one exception which was subsequently discredited, that the presumption of innocence is extinguished upon conviction at trial. In *State* v. *Redman* (1915), 183 Ind. 332, 109 N.E. 184, it was held that a judge could be removed from office when "a conviction has resulted at the hands of a tribunal competent to render a judgment of the character contemplated," even though an appeal was pending. The court defined "conviction" as follows:

> "It is usually considered that there has been conviction of crime when there is a plea of guilty to a charge duly presented or a finding or verdict of guilty after trial, and that thereafter the presumption of innocence no longer follows the defendant. And certainly that is so after judgment rendered and the execution of it by imprisonment, such as we have here." 183 Ind. at 342, 109 N.E. at 188.

Snelling relies upon a later case, *State ex rel. Cutsinger* v. *Spencer* (1942), 219 Ind. 148, 41 N.E.2d 601, in which the Supreme Court, without citing any authority or precedent, seemed to take a position opposite from that taken in *Redman*, saying:

> "Until a person accused of crime has been convicted upon a trial free from error which prejudices his substantial rights, it may be said that he is presumed to be innocent and continues to be merely 'the accused' person referred to in section 13 of article 1 of the Constitution. After he has been convicted, and the judgment has become final, and it has been determined upon appeal that there was no prejudicial error in the trial, or when the time is past and the right to a review for error has been waived, the defendant is no longer 'the accused,' and the 'criminal prosecution(s)' is ended. He then stands convicted, and must be presumed to be guilty unless and until he procures the judgment to be vacated." 219 Ind. at 152-3, 41 N.E.2d at 602-3

However, as the State correctly points out the above dicta from *Cutsinger* was subsequently disapproved in *Joseph* v. *State* (1957), 236 Ind. 529, 141 N.E.2d 109:

> "[The Cutsinger case] cannot be considered as authority for the statement, that a defendant who takes the proper steps to appeal from a judgment of conviction remains the accused after the jury has found him guilty and the court has entered judgment upon the verdict. At this point the defendant stands convicted and ceases to be the 'accused' within the meaning of Article I, Section 13 of the Constitution of the State of Indiana.
>
> "Insofar as State ex rel. Cutsinger v. Spencer, supra, 1941, 219 Ind. 148, 41 N.E.2d 601, purports to hold that a defendant continues to be the accused person referred to in Section 13 of Article I of the Constitution of the State of Indiana until his case has been affirmed on appeal, it is disapproved." 236 Ind. at 538, 141 N.E.2d at 113.

Finally, in *Coates* v. *City of Evansville* (1971), 149 Ind. App. 518, 273 N.E.2d 862, this Court found it proper to continue a fireman's suspension without pay while his conviction of theft was pending on appeal, citing *State* v. *Redman, supra,* to support the proposition that the presumption of innocence does not follow the defendant on appeal following conviction.

A minority of jurisdictions holds that a conviction may not be used for impeachment purposes until the appellate process has been exhausted because the disclosure may result in irreparable prejudice to the defendant if that conviction is reversed on appeal. *See* generally 16 A.L.R. 3d 726, 735-38, *supra*. While we recognize the inherent danger if there is a subsequent reversal of the first conviction, we find the better rule, and the one most consistent with existing Indiana law, to be that such convictions are not rendered inadmissible because of the pendency of an appeal.

### III. THE TRIAL COURT DID NOT ERR IN REFUSING CERTAIN OF SNELLING'S INSTRUCTIONS

Snelling contends that the trial court erred in refusing to give his tendered final instruction No. 1, which reads as follows:

"You are instructed that Deception is a necessary element of the charge against this Defendant; therefore, if you find that the State's witness, Ina Fay Arnold, knew or in the exercise of reasonable care should have known, before payment of her bill presented by the defendant that the work done by the defendant had not been done as the defendant agreed to do same, she was not deceived and you should find the defendant 'not guilty.' "

Snelling argues that the court's instruction did not cover the essential element of deceit, and that failure to give his tendered instruction thus left the jury uninstructed. A virtually identical instruction was disapproved in *Snelling* v. *State, supra:*

"We agree that the Court's final instructions did not instruct the jurors on 'deception'. That omission, however, did not bestow upon Snelling the right to have an erroneous instruction given.

"Snelling's tendered instruction was properly refused for a number of reasons including a misstatement of the law. The word 'deception' as used in the Offenses Against Property Act is defined carefully and at length. None of the language contained in that definition implies that there is no deception if the person deceived 'in the exercise of reasonable care should have known' that the representations made to him were untrue, and Snelling has cited no authority supporting such an interpretation. On the contrary the statutory definition places upon the person who has created a false impression (e.g., that roof timber needed replacement and that he replaced them) the burden of dispelling it." [footnotes omitted.] 326 N.E.2d at 609.

Snelling also claims that the trial court erred in refusing to give defendant's tendered instruction No. 3:

"The Court instructs the jury that it is not for the jury to weigh the consideration for any contract between the defendant and State's Witness, Ina Fay Arnold, if any such contract be shown you by the evidence herein, but only to weigh the evidence to see if there was consideration for such contract."

Snelling maintains that this instruction was essential to

inform the jury that evidence of mere overcharge is insufficient to support a conviction of theft by deception.

The indictment charged that Snelling received money from Mrs. Arnold upon his representation that bracing was necessary and that he had installed it, when in fact bracing was unnecessary and he had installed none. Whether Snelling charged too much for the work was not an issue. There was no work relative to bracing for which he could charge. It is not error to refuse an instruction inapplicable to the issues. *Martin* v. *State* (1973), 260 Ind. 490, 296 N.E.2d 793; *Johnson* v. *State* (1971), 256 Ind. 497, 269 N.E.2d 879, cert. den. 405 U.S. 921.

## IV. THE TRIAL COURT DID NOT ERR IN SENDING WRITTEN COPIES OF THE FINAL INSTRUCTIONS TO THE JURY ROOM

Snelling's final argument is that the trial court violated existing Indiana law and committed reversible error in sending copies of the final written instructions to the jury room. We disagree.

Only two early Indiana cases directly discuss the practice of sending written instruction to the jury room. Other cases involving written instructions are actually more concerned with the supervision of communications between the court and the jury. For example, in *Hall* v. *State* (1875), 8 Ind. 439, the judge withdrew two of the written instructions which he had sent to the jury room because they were erroneous. Although the court commented that the practice of sending instructions was "perhaps not very judicious", its reason for reversing the conviction was that the withdrawal had been made during a recess, in the absence of the defendant and his counsel. The Supreme Court there held that to preserve the parties' right to instructions from the court, instructions had to be given and withdrawn in open court in the presence of the parties. Similar problems drew criticism in *Jones* v. *Johnson* (1878), 61 Ind. 257 (judge went to the

jury room and "enlarged a little" on the instructions) ; *Low* v. *Freeman* (1888), 117 Ind. 341, 20 N.E. 242 (judge sent written answer to question by jury), and the later case of *Deming* v. *State* (1956), 235 Ind. 282, 133 N.E.2d 51 (communications between judge and jury through the bailiff).

It was first directly stated that oralizing of the instructions was preferable (although not required) in *Smith* v. *McMillen* (1862), 19 Ind. 391. There, the court sent the written instructions given at trial to the jury after they had been deliberating and without the consent and the absence of one of the parties. The Court, without citing authority, said:

"The principal is, that the jury shall take the law from the Court. The mode in which the Court communicates with the jury is by addressing them in open Court. The jury take the law from the Court through the ear. By so doing, they generally stand upon equality, because none but men with hearing ears are competent jurors. In the jury-room, then, each depends upon his own recollection of the instructions, and upon the impression they made upon him for their meaning, their construction; and, thus standing upon an equality, if they differ, they should come into Court, and, in presence of the parties, let the Court be the interpreter of its own instructions. But if, instead of this being done, the Court sends the written instructions to the jury, inasmuch as jurors are not upon equality in their ability to read and interpret writing, it puts it in the power of sharp ones on the jury to read, and become the interpreters for the Court, and mislead their less skillful fellow-jurors. We think instructions should not be sent to the jury-room, without consent of both parties." 19 Ind. at 391.

In *Jones* v. *Austin* (1901), 26 Ind. App. 399, 59 N.E. 1082, the trial judge inadvertently sent the written instructions which had been given at the request of the appellee to the jury, and it was 12 hours before the mistake was discovered and the instructions withdrawn. While not finding reversible error under the circumstances, the Appellate Court said:

"The taking of instructions into the jury room is spoken of in *Hall* v. *State,* 8 Ind. 439, as a practice perhaps not very judicious. That a contrary opinion has supporters, see

*Chattahoochee Brick Co.* v. *Sullivan,* 86 Ga. 50, 67, 12 S.E. 216, 17 Am. & Eng. Ency. of Law (2nd ed.) 1244. It certainly could not be regarded as judicious knowingly to send out with the jury written instructions prepared by one party while withholding from them written instructions given at the request of the other party and those given upon the court's motion." 26 Ind. App. 407, 59 N.E. at 1085.

After citing two cases which said that *evidence* should not be sent to the jury room, the Court concluded that, ". . . it is the usual practice . . . not to send written instructions to the jury room, leaving it to the jurors to carry out the instructions pronounced only in open court, as well as the evidence, in their memories." 26 Ind. App. at 407-8. As further authority for this position the court cited *Jones* v. *Johnson, supra,* and *Low* v. *Freeman, supra,* both of which said only that communcations should be made in open court, and *Farley* v. *State* (1877), 57 Ind. 331, which said that it was permissible to recall the jury and given them additional instructions in open court. Support was also found in an Indiana statute which permitted the jury after retiring to request instruction on a point of law, and to be conducted into open court to be given that instruction.

Thus "existing law" with respect to instructing juries only by reading instructions in open court, is actually a procedure established primarily by custom. As the quote from *Smith* v. *McMillen, supra,* demonstrates, the Supreme Court in 1862 believed that oral instructions would put jurors on more equal footing. In light of today's education standards, it is persuasively argued that giving the jury written copies of the instructions which have been read in open court is more likely to promote equality than to rely on equally retentive memories. *See Miresso* v. *State* (1975), 163 Ind. App. 231, 323 N.E.2d 249, approving the taking of notes by jurors as an aid to memory of the evidence presented.

In recent cases, the question of written instructions has been raised by defendants urging that the trial court committed reversible error in refusing to send written instruc-

tions to the jury. Our Supreme Court in *Martin* v. *State* (1973), 260 Ind. 490, 296 N.E.2d 793, noted that there were persuasive arguments on both sides of the question but declined to require the sending of written instructions. *See also, Ballard* v. *State* (1974), 262 Ind. 482, 318 N.E.2d 798; *Woods* v. *State* (1973), 159 Ind. App. 92, 304 N.E.2d 817.

This Court rejected the same argument which Snelling now advances in *Snelling* v. *State* (1975), 163 Ind. App. 546, 325 N.E.2d 227. The Court found no abuse of discretion by the trial judge in sending written instructions to the jury; and stated that such error, if any, was harmless.

As our Supreme Court said in *Martin* v. *State, supra*, a legislative enactment or court rule would be needed if it were to be *required* of trial courts that they send written copies of the instructions to the jury. This is not to say that it is erroneous or contrary to law for a trial court in the exercise of its discretion to follow that practice.

The record before us contains an extremely comprehensive and scholarly memorandum by Judge Wilson which analyzes the Indiana case law upon the subject. The memorandum is eloquently supportive of the trial court's conclusion that:

> "A brief reflection on the purpose of the instructions should establish the practice of sending the written instructions to the jury room."

As our survey of Indiana law regarding communication with the jury indicates, the crucial requirement is that the instructions first be read in open court in the presence and with the consent of the parties and their attorneys. Since the trial judge did so here, we find that it was proper to send copies of the instructions to the jury.

The judgment is affirmed.

Buchanan and White, JJ., concur.

NOTE.—Reported at 337 N.E.2d 829.